## BARRETT v. BUCHANAN et al.

No. 10741—Opinion Filed March 13, 1923.

(Syllabus.)

1. **Partnership —Mining Partnership —Tenants in Common of Oil Lease.**

Where tenants in common co-operate in developing a lease for oil and gas, each agreeing to pay his part of the expenses and to share in the profits or losses, they constitute a mining partnership.

2. **Same—Advancement by Partner—Lien.**

A member of the mining partnership who advances more than his share of the money to operate or develop oil lands has a lien on his partner's share to the extent of his overadvancement on final accounting.

3. **Same—Lien on Undisclosed Interest of Third Party.**

Where A. and B. develop an oil lease under such circumstances as to create a mining partnership between them, and B. is thereafter adjudged to hold his interest in the lease as trustee for O., and A. had no

knowledge, either actual or constructive, that O. was the real owner of the property, and O. had led A. to believe that B. was the owner of the property, and A. had advanced more than his share of the expense of developing the property, O. is estopped from contesting the validity of A.'s lien on the trust property.

Error from District Court, Rogers County; W. J. Campbell, Judge.

Action by Lee Barrett against S. A. Oakley and others to establish interests in oil and gas lease and for an accounting. From an adverse judgment, the plaintiff brings error. Reversed and remanded, with directions.

W. H. Kornegay, for plaintiff in error.

Geo. L. Burke, for defendant in error.

COCHRAN, J. This action was instituted by the plaintiff in error, who will hereinafter be referred to as plaintiff, against S. A. Oakley, hereinafter referred to as defendant, and the Prairie Oil & Gas Company, seeking to have the interests of the parties established in an oil and gas lease, and an accounting for money expended in the development of the oil and gas lease.

The Prairie Oil & Gas Company filed a demurrer, which was by the court sustained. The defendant, Oakley, answered, alleging that the plaintiff was the owner of an undivided one-half interest in the lease, and that the record title to the other one-half interest was in W. B. Buchanan up to December 19, 1916, when, by decree in the district court of Rogers county, the said Oakley was decreed to be the owner of such undivided one-half interest. Defendant further admitted that there had been development on said premises resulting in producing wells; but alleged that the expenditures therefor had been made before the defendant acquired his interest in said lease and were made by the plaintiff and Buchanan without the knowledge or consent of the said Oakley, and that he was not liable for said expenditures. The case was tried to the court without a jury, and testimony developed that in June, 1914, Oakley and Buchanan decided to purchase an oil and gas lease; Oakley contributed $100, it being agreed that each should own an undivided one-half interest in the property; the lease was procured in the name of Buchanan, and no conveyance was ever made of any interest in this lease to Oakley; thereafter, on January 12, 1915, the plaintiff entered into an agreement with Buchanan and Oakley by which the plaintiff paid to Oakley the $100 which he had invested in the lease, and re-

ceived from Buchanan an assignment of an undivided one-half interest in the lease. Buchanan and the plaintiff thereupon proceeded to develop the lease for oil and gas and procured several producing wells, but in so doing became considerably involved on account of the expense incident thereto. Buchanan having failed to pay any part of this expense, the plaintiff paid the entire amount out of his own funds, and was operating the lease and applying the proceeds from the sale of the oil on this indebtedness. After oil was discovered on the property Oakley filed a suit against Buchanan for a one-half interest in the lease, and procured service on Buchanan by publication. No appearance having been made by Buchanan, on December 19, 1916, judgment was entered decreeing that Oakley had a one-half interest in the oil and gas lease. Demand was made by the plaintiff on Oakley for the payment of one-half of the cost of development of the property, and defendant refused to pay the same. The trial court found that plaintiff was not entitled to any relief, and dismissed his petition.

When plaintiff purchased an undivided one-half interest in the oil and gas lease, he became a tenant in common with Buchanan, and when thereafter Buchanan and the plaintiff agreed to develop the property, each paying his part thereof, and did develop the same in common, the relationship created by this agreement is usually referred to as a mining partnership. This term has been applied to distinguish this relationship from the ordinary partnership arrangement, and refers principally to the obligations and liabilities incurred by tenants in common who develop their property for minerals or oil, and gas. In 15 Am. Eng. Cyc. of Law, 609, a mining partnership is defined as follows:

"Where the tenants in common of a mine unite and co-operate in working it, they constitute a mining partnership."

In Childers v. Neely (W. Va.) 49 L. R. A. 468, the court said:

"Mere coworking makes them partners, without special contract. Barringer & A. Mines & Mining. Courts of equity take jurisdiction of them as if general partnerships. * * * Of course, owners of mines, oil leases, or farms can by agreement make an ordinary partnership therein; but where tenants in common of mines or oil leases or lands actually engage in working the same, and share, according to the interest of each, the profit and loss, the parnership relation subsists between them although there is no express agreement between them to become partners or to share the profits and losses."

In the case of Childers v. Neely, supra, the court distinguishes between a general partnership and a mining partnership, and uses the following language:

"One leading distinction between the mining partnership and the general one is that the general one has, as a material element of its membership, the delectus personae (choice of person), while the other has not. Those forming an ordinary partnership select the persons to form it, always from fitness, worthiness, of personal confidence; but we know such is not always or often the case in oil ventures. * * * A mining partnership is a nontrading partnership, and its members are limited to expenditures necessary and usual in the particular business."

Thornton on the Law of Oil and Gas, sec. 355, says:

"If two or more owners of a mine unite in working it, without any partnership agreement, the act of working it together creates a mining partnership; and the same is true of two or more holding interest in a lease of mining property. 'Whatever may be the rights and liabilities' of tenants in common of a mine not being worked,' said the Supreme Court of California, 'it is clear that when the several owners unite and co-operate in working the mine, then a new relation exists between them, and, to a certain extent, they are governed by the rules relating to partnership. They form what is termed a mining partnership, which is governed by many of the rules relating to ordinary partnerships, but which has also some rules peculiar to itself, one of which is that one person may convey his interest in a mine and business without dissolving the partnership."

The defendant contends that this relationship cannot be considered a partnership, because section 4432, Revised Laws 1910, provides:

"A partnership can be formed only by consent of all parties thereto, and no new partner can be admitted into a partnership without the consent of every existing member thereof."

As stated above, this arrangement cannot be called a partnership within the general law applying to partnerships, but is simply a term which has been applied to the relationship existing between joint owners of mining or oil property who have undertaken to develop the same in common, and sharing in the loss or profits. Thornton on the Law of Oil & Gas. sec. 364, states the liability of such partnership as follows:

"A partner, whether he be a member of a mining partnership or an ordinary partnership, who advances more than his share of money to operate or develop the mine,

or the gas or oil lands, has a lien on his partner's share to the extent of his over-advancement, on final accounting."

The following cases support the doctrine announced above: Ervin v. Masterman, 16 Ohio Cr. Ct. Rep. 62; Childers v. Neely (W. Va.) 34 S. E. 828; Duryea v. Burt, 28 Cal. 569.

We must, therefore, conclude that the plaintiff has a lien on the partnership property to reimburse him for the amount which he had expended in excess of his part of the cost of developing the property.

Having reached this conclusion, it is necessary to determine to what extent the defendant, Oakley, is bound by the lien in favor of the plaintiff. It is contended that the judgment awarding Oakley a one-half interest in the property being silent as to any liability for the development, he is entitled to take a one-half interest free and clear of the claim of the plaintiff. The plaintiff was not a party to the suit in which Oakley was adjudged to have an interest in the property, and he is not precluded from asserting his claim by such judgment. Even if Oakley were considered as incoming partner, taking the place of Buchanan, the partnership property would still be subject to the plaintiff's lien; but under the facts in this case Oakley was the owner of an interest in the property all the time, and the judgment of the court simply decreed to him that which he asserted belonged to him from the time the lease was originally purchased. After the plaintiff purchased a one-half interest from Buchanan, Buchanan's only interest in the property was as trustee for Oakley; but the plaintiff had no knowledge of that fact and dealt with him believing that he was the owner of the other one-half interest in the property and Oakley permitted this condition to exist from the time of the purchase of the lease in 1914 until late in the year 1916, and in addition led the plaintiff to believe that he was claiming no interest in the property and that the one-half interest which the plaintiff acquired from Buchanan was the interest which Oakley had theretofore had in the lease. The plaintiff having entered into an agreement with Buchanan for the development of the lease under the circumstances above stated, and by reason of such agreement and such development having acquired a lien on the partnership property as against Buchanan, Oakley is now estopped from contesting the validity of this lien.

The judgment of the trial court is reversed, and cause remanded, with directions to grant a new trial, that the demurrer of the Prairie Oil & Gas Company be overruled, that an accounting be had, and the plaintiff be adjudged to have a lien on the interests of the defendant, Oakley, in said lease and in the oil produced therefrom for the payment of one-half of the expenses for developing the lease for oil and gas.

JOHNSON, V. C. J., and McNEILL, KENNAMER, NICHOLSON, and BRANSON, JJ., concur.