### GILLESPIE v. SHUFFLIN et al.

No. 11321—Opinion Filed June 12, 1923.

**1. Mines and Minerals—"Mining Partnership."**

In order to constitute a mining partnership, the parties must co-operate in developing a lease for oil and gas, each agreeing to pay his part of the expenses and to share in the profits or losses.

**2. Same—Cotenants—Presumption.**

Inter sese, no presumption of partnership arises from cotenancy, nor from the mere operation of a mining lease by cotenants, but must be created by agreement.

### 3. Same—Intention.

Inter sese, there must be an intention of the partners to do so, in order to create a partnership, and such intention cannot be inferred, alone, from a joint venture in drilling a well.

### 4. Same—Grubstake Contract.

G. agreed with S. to pay a part of the expense of drilling an oil well; S. was to perform the labor and bear the remaining expenses thereof. In consideration of drilling such well each was to receive a proportionate interest in the lease on which same was drilled. S., without the knowledge or consent of G., obtained an interest in adjoining lease for himself in consideration of drilling said well. Held, such joint venture was not a mining partnership, but a "grubstake" contract, and G. cannot compel an accounting from S. on the theory of a mining partnership, for profits S. derived from such adjoining lease.

(Syllabus by Estes, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Nowata County; C. W. Mason, Judge.

Action by Joseph Gillespie against M. B. Shufflin et al., wherein defendants demurred to the evidence, demurrer sustained, and judgment for defendant M. B. Shufflin for costs. Affirmed.

Charles Bucher and T. J. Hanlon, for plaintiff in error.

Walter S. Keith, F. J. Raymond, and Geo. B. Schwabe, for defendants in error.

Opinion by ESTES, C. Parties will be referred to as in the court below. Plaintiff and defendant M. B. Shufflin each became the owner of a one-fourth interest in an oil and gas lease on the so-called Guord allotment in Nowata county in consideration of drilling a well thereon, on terms hereinafter referred to. The other defendants were the owners of an oil and gas lease on the so-called Welch allotment, adjoining the Guord allotment on the east. After plaintiff and defendant M. B. Shufflin had drilled the Guord well, plaintiff sued Shufflin and the other defendants herein, who were the owners of the Welch lease, alleging that plaintiff and defendant M. B. Shufflin were mining partners, and sought an accounting of the profits received by Shufflin from the Welch lease, and that Shufflin be adjudged to hold the same in trust for the benefit of the alleged partnership, and dismissed as to all other defendants. Plaintiff alleged that he and defendant had drilled one or more dry holes in the vicinity, and that he suggested to Shufflin that the latter procure a bonus

or an interest in the Welch lease in consideration of drilling a well on the Guord as an offset to the Welch, thus testing the latter: that defendant M. B. Shufflin did procure a one-fourth interest in the said Welch lease, individually, in consideration of drilling the proposed well on the Guord, 100 feet west of the Welch, and concealed this fact from the plaintiff until the completion of the said offset on the Guord; that the said offset drilled by plaintiff and Shufflin on the Guord was a producing well, and because thereof several producing wells were later drilled on the Welch; that Shufflin's one-fourth interest in the Welch had yielded him large income, and that he refused to account to the plaintiff therefor, and that the conduct of Shufflin was in bad faith, and violative of the rights of the plaintiff as his partner.

Defendant, in substance, admitted all the allegations except the charge of bad faith and fraud, and specifically denied such partnership, and claimed for himself alone the profits of the Welch, and the interest in the lease free of any claims of the plaintiff as his partner.

At the conclusion of plaintiff's testimony, the trial court sustained a demurrer to the evidence, and on motion rendered judgment against the plaintiff for costs.

It is necessary to determine whether or not plaintiff, Gillespie, and defendant Shufflin were mining partners, in order to determine whether the court erred in sustaining said demurrer. If they were mining partners, we think the conduct of Shufflin was reprehensible and lacking in good faith required from one partner toward the other, and that he ought not be permitted to make any personal profits out of the partnership business.

It is often very difficult to determine whether a given statement of facts constitutes a partnership. The difficulty lies, largely, in applying the principles of partnership to the particular facts. The plaintiff testified as follows:

"Q. Whose rig was it that drilled Guord Number One? A. Shufflin's. Q. Mr. Shufflin's rig? A. Yes sir. Q. Now, just what agreement did you have with Mr. Shufflin in regard to the drilling of this well? What were you to get and what were you to pay? A. What is that? Q. What were you to pay and what were you to receive for the drilling of this well? A. I was to pay half the expense of drilling that well. Q. Of the Guord Number One? A. Of the Guord Number One. A. And was there any price agreed upon for the drilling of this well? A. No,

sir; not between him and I. Q. And was there any price per foot agreed upon? A. No, sir. Q. Do you know the—at the time of the contract--price for drilling wells in that vicinity? A. I don't remember. Q. You didn't answer a moment ago. I asked you just what you were to receive for what you paid in the drilling of Guord Number One? A. I was to get just as much as Mr. Shufflin was to get out of it. Q. Well, how much was that? A. Why, we were to drill that well for a half interest in the Guord lease. Q. In the Guord lease? A. Yes, sir. Q. And you received your interest in that, have you not? A. Yes, sir. Q. It was assigned to you? A. Yes, sir. Q. Was your agreement with Mr. Shufflin to dri'l Guord Number One and bear half the expense a verbal contract, or a written contract? A. Verbal. * * * Q. Mr. Gillespie, in drilling of Guord Number One did you furnish the defendant, Mr. Shufflin, with coal or fuel to drill that well with? A. No, sir; he drilled by the foot. Q. He drilled by the foot? A. Yes, sir. Q. It is up to him to furnish the fuel? A. Yes, sir. Q. It was up to him to furnish the men and the rope? A. Yes, sir. Q. And the labor? A. Yes, sir. Q. Do you know how much Mr. Shufflin was to receive per foot? A. No, sir; he had already drilled a dry hole in which I and him and others were interested in it. I supposed it would be the same as the other well got. Q. How much was that? A. I don't remember."

Plaintiff also testified that Shufflin told him prior to the drilling of the Guord well that the owners agreed to give him a half interest in the Guord lease for drilling; that plaintiff told Shufflin that he and Shufflin had drilled two dry holes and would go ahead and drill another one; that plaintiff told Shufflin to move his rig on the Guord and drill the well; that plaintiff called attention of Shufflin to the fact that they were testing other property and that they should have some money to help drill the Guord well, or an interest in the lease; that Shufflin told plaintiff that he had seen the parties adjoining (meaning the Welch) and that they would neither come in with money nor any interest in the lease; that they had spent money on another well and were discouraged.

Plaintiff also introduced in evidence an itemized statement rendered to him by defendant Shufflin, covering the total cost of drilling the Guord well, and plaintiff testified that he paid to Shufflin on the footage, one-half thereon, at the rate of $1.10 per foot. We take it that as between the alleged partners and the owners of the Guord, the former were to pay all this footage cost, making the plain-tiff's share one-half thereof. The plain-tiff paid to Shufflin one-fourth of all other items, per said statement, which were for water well, casing, hauling, and the like. We take it that as between the alleged partners and the owners of the Gourd, the former were to pay only one-half of these items, making plaintiff's part one-fourth.

There was other evidence produced by the plaintiff bearing on the custom of the field, both pro and con, as to the right of Shufflin to obtain an interest in the Welch lease **and hold the same** without accounting to the plaintiff, but we think this evidence tended to usurp the function of the court in determining the question of law in this case.

"The test applied to a demurrer to the evidence is that all the facts which the evidence in the slightest degree tends to prove, and all inferences or conclusions which may be reasonably and logically drawn from the evidence, are admitted." Taylor, Adm'r, v. Enid National Bank et al., 77 Okla. 74, 186 **Pac. 232.**

Admitting the truth of all of plaintiff's testimony, and giving him the benefit of every inference, under said rule, the agreement between plaintiff, Gillespie, and defendant Shufflin was verbal and, as nearly as we can make out, was, in substance, that Shufflin was to use his own rig, furnish the fuel, labor, rope, and the like, and bear all the expense of the footage cost, except 55 cents per foot to be paid by the plaintiff, and that plaintiff and Shufflin were each to pay one-fourth of all other expenses of drilling of said well, in consideration whereof each was to receive, and each did receive, an assignment of one-fourth interest in the Guord lease.

1. "Partnership is the association of two or more persons for the purpose of carrying on business together and dividing its profits between them." Comp. Stats. 1921, **section 8103.**

Mining partnerships are recognized as such in the recent case of Barrett v. Buchanan et al., 95 Okla. —, 213 Pac. 734, and the relation of mining partners, inter sese, is discussed. The first paragraph of the syllabus is:

"Where tenants in common co-operate in developing a lease for oil and gas, each agreeing to pay his part of the expenses and to share in the profits or losses, they **constitute 'mining partnership.'** "

In the body of the opinion it is indicated that in order to constitute such relation, the tenants in common must "unite and co-operate in working the mine." Gillespie and Shufflin did not unite and co-operate in working the mine, that is, the Guord lease. The object of their agreement was to obtain

an undivided one-half interest in the Guord lease. The money paid by the plaintiff and the money and labor expended by Shufflin in drilling the Guord well was the consideration for such one-half interest. Instead of paying cash, they entered upon a joint venture under the terms shown in the oral agreement whereby they procured such interest. Shufflin obtained a one-fourth interest in the Welch which resulted greatly to his own advantage, since the Guord came in a producer. Whether he was guilty of fraud or sharp practice, and liable to Gillespie therefor, we are not called upon to decide, because the plaintiff's action is bottomed on partnership.

Can it be said that the drilling of this well was developing the lease, and that their action together was such co-operation as to constitute them partners? Drilling the well by their joint efforts—this fact of itself and alone—whether as cotenants, or in order to become cotenants. does not make these men mining partners, and the arrangement lacks the other elements of partnership, hereinafter pointed out.

2. "There is no presumption of a partnership from cotenancy, nor even from the operation of a mining lease by cotenants." Neill v. Shamburg. 158 Pa. 263:1 Thornton on Oil & Gas (3rd Ed.) section 357, page 523.

In Mattocks v. Gibbons (Wash.) 162 Pac. 19, it is held that even an agreement in writing whereby a railroad furnished money and drilling outfit, and the other party furnished the labor for drilling an oil well, was not a partnership, but a "grubstake" contract. See, also, Dunham v. Loverock et al, 158 Pa. St. 197, 27 Atl. 990. In that case it is shown that, as between persons so situated, a partnership does not result by implication of law, but must be created by an agreement. The plaintiff, Gillespie, under this evidence has failed to sustain the burden of this element of partnership.

3. "Where the parties themselves are concerned, the partnership is not created except where the parties so intend it by voluntary agreement to that effect, and not by implication of law." Municipal Paving Co. v. Herring, 50 Okla. 470, 150 Pac. 1067.

We cannot say that the foregoing evidence shows an intention to form a partnership. It shows an intention by this joint venture to obtain an interest in the lease, rather than an intention to co-operate in developing the lease. These men became cotenants with the other owners of the Guord. The evidence does not show what any of them intended to do if the Guord proved to be a producer. Each would enjoy the income of the one well, and could sell his interest or develop further under the terms to be agreed upon.

This agreement is also silent as to the profit sharing element. It need not show an agreement to share in losses. This could be inferred under our statute, if there were an agreement to share profits. The object of the venture being to obtain a one-half interest in the Guord, we doubt whether losses and profits entered the minds of the parties, except as each might profit or lose by the ownership of an undivided one-fourth interest in the Guord.

It is said in Gorman v. Carlock, 72 Oklahoma, 179 Pac. 38, 41:

"We do not understand because a party may be interested with two or three persons in one lease that, when he acquires an interest with different persons in another lease, or acquires another lease for himself, that the co-owners in the first lease become partners in all the leases acquired by said person."

4. It seems, by the joint venture of plaintiff and Shufflin, they became the owners of an interest in the Guord, and that Shufflin took advantage in that venture to acquire for himself an interest in the Welch. We think that these parties engaged in a common venture, the nature of which, in mining parlance, is analogous to what is called a "grubstake," whereby one of the parties undertakes to prospect for minerals and agrees to yield to the other, who furnishes money or supplies for the enterprise, a certain proportionate interest in any minerals discovered. Mattock v. Gibbons, supra.

The trial court properly sustained the demurrer to the evidence and directed judgment for costs against the plaintiff. Judgment affirmed.

By the Court: It is so ordered.