**ROBINSON PETROLEUM CO. et al. v. BLACK. SIVALLS & BRYSON, Inc. et al.**

No. 18575. Opinion Filed Sept. 17, 1929.

A. K. Swann, for plaintiffs in error.

A. M. Widdows and Frank T. McCoy, for defendant in error Black, Sivalls & Bryson, Inc.

Gray & Palmer, for defendant in error F. K. Aggers.

Hamilton, Gross & Howard, for defendant in error W. J. Holden.

FOSTER, C. This is an action to foreclose mechanics' liens on behalf of laborers and materialmen furnishing labor and material on a certain oil and gas lease in Osage county, Okla. The oil and gas lease was owned by the Robinson Petroleum Company, a corporation. Sol Robinson was president of said corporation and his wife and son were the only other stockholders. The Union Petroleum & Supply Company, under a contract with the Robinson Company, drilled an oil and gas well on the lease. The defendants in error obtained judgments for the respective amounts of labor performed and material furnished against the Union Petroleum & Supply Company, the Robinson Petroleum Company, and Sol Robinson, individually, and a foreclosure of the liens against the oil and gas lease, together with the equipment thereon belonging to all three of the parties as above set out.

From the personal judgment granted each of the claimants, who are defendants in error, against the Robinson Petroleum Company and Sol Robinson, and the judgment foreclosing the lien upon the leasehold estate, the said Robinson Petroleum Company and Sol Robinson prosecute this appeal.

The Robinson Company owned the oil and gas lease in question, and on or about the 8th day of April, 1924, entered into a written contract with the Union Petroleum & Supply Company for the drilling of an oil and gas well thereon. By the terms of said contract, the Union Company was to drill a well to what is known as the Wilcox sand at about 2,300 feet, and, in event said well produced, the Union Company was to receive from the Robinson Company an assignment of a one-half interest. If the well produced 100 barrels or more within 15 days after completion, the Robinson Company was to pay, in addition to the one-half interest, the sum of $8,000. In event of a dry hole, the Union Company was to remove all material which it had used in drilling. The drilling was to be done free of any expense to the Robinson Company, and, in event of a gas well large enough that a gas company would take it over and pay the expense of drilling, then the money was to be used by the Union Company to drill another well, which was also to be free of any expense to the Robinson Company.

Under this contract, the Union Company began the drilling of the well. It ordered a small amount of material from Black, Sivalls & Bryson, but the principal part of the claim of Black, Sivalls & Bryson, which amounted to $1,877, was purchased by Sol Robinson, he contending, however, that he was acting for the Union Company, and exhibited at the trial a letter from the said Union Company showing his authority. Black, Sivalls & Bryson, however, testified they sold the material, which consisted principally of tanks placed upon the lease, at the request of Sol Robinson. The claim was charged upon the books of Black, Sivalls & Bryson to the Union Company, but in their petition to foreclose the lien they joined the Union Company, the Robinson Company, and Sol Robinson, individually.

The claim of F. K. Aggers for the sum of $1,499 arose under the following circumstances: He testified that he was called to the office of the Union Company and had a conversation with the officers of that company, in which they told him that they were drilling a well, and that Sol Robinson was

interested therein, and that the gas had been blowing for a week or ten days, and they had to get the same fixed up; otherwise, the Indian Agency at Pawhuska would fine them $500 a day. He (Aggers) went to the lease with one of the officers of the Union Company, and was there met by Robinson's boy, who explained to him that he (Robinson's boy) was in charge of the lease. Mr. Aggers appears to be an expert in mudding-in wells, and, after considerable conversation, he went to work on the well and was employed some three or four months. His services extended over a period from August 11, 1924, to about December, 1924. At all times Mr. Robinson or his boy appeared to be in charge of the lease. The lease also had the name of the Robinson Company painted upon a signboard which was placed upon the lease in plain view of everyone.

J. W. Holden secured a judgment in the sum of $1,000 for work in running the casing in the well. According to his testimony, he was employed by the Union Company, but before he went to work he saw Mr. Robinson, and he told him to send his bill to him. He also testified that, upon his arrival at the lease, Sol Robinson introduced him to Mike Sanders as his (Robinson's) superintendent. He denied that he had any information that Mr. Robinson was acting for the Union Company.

Black, Sivalls & Bryson, W. J. Holden, and F. K. Aggers are the only ones who filed a brief in this case, although W. H. Byron secured a judgment for the sum of $6,589; the U. S. Supply Company $4,008; R. W. McCoy $12; and L. M. Hurray $74.

The U. S. Supply Company's claim is for pipe furnished, and it appears to have been at the request of the Union Company only. W. H. Byron had a written contract with the Union Company for the drilling of the well, in which contract the Union Company agreed to pay a specified amount, and, although W. H. Byron talked the matter over often with Robinson, there is no testimony that he directly promised to be responsible for the claim. R. W. McCoy and L. M. Murray were employed by Byron and claim only as subcontractors and ask for a personal judgment against Byron only.

The record in this case is quite voluminous and the testimony is conflicting. Sol Robinson and his wife and son were the sole owners of the Robinson Company, and Sol Robinson was upon the lease many times giving orders and exercising apparent ownership and control.

The written contract between the Robinson Company and the Union Company above referred to was never placed of record, and it does not appear that any of the claimants, who are defendants in error, were told of the arrangements between the companies for the drilling of the well with the exception of Byron.

The Union Company abandoned its contract on or about the —— day of October, 1924, and never received the assignment provided for in the contract. The Sage Petroleum Company appears then to have assumed the responsibility for completing the well, and some of the material and part of the labor claimed by the defendants in error was purchased while the Sage Company was attempting to complete the contract of the Union Company.

There is no dispute in the record but what the Union Company is responsible to each of the defendants in error for the full amount of their claims, and the judgment against that company is nowhere attacked. The foreclosure of the lien against the property of the Union Company is not disputed. The only question presented by this appeal is whether or not the personal judgment against Sol Robinson and the Robinson Company is erroneous and whether the foreclosure of the lien against the oil and gas lease and other property belonging to Robinson and the Robinson Company can be maintained.

Many assignments of error are presented by the plaintiff in error in their motion for a new trial and petition in error. The same are argued in their brief under ten propositions. We do not think it is necessary to consider each of the propositions, as it is admitted by the brief of plaintiffs in error that, if the situation presented here amounted to a mining partnership consisting of the Union Company, the Robinson Company and Sol Robinson, then the judgment of the district court should be sustained.

After a careful consideration of the record and briefs filed in the case, we believe the same presents a situation that at least estops Sol Robinson and the Robinson Company from denying the existence of a mining partnership.

The third proposition presented by the plaintiffs in error is that no mining partnership existed. Numerous cases are cited and quoted from in the very exhaustive brief of the plaintiffs in error. We have carefully considered each of these cases to-

gether with many others on our own investigation.

The question of whether a mining partnership exists is often difficult to determine. It has been before this court in many cases. Numerous definitions have been given for an association known as a mining partnership. It has been distinguished from an ordinary partnership and from a joint adventure, and from what is called a "grub-stake."

It is well settled that, in order to constitute a mining partnership, the parties must co-operate in developing an oil and gas lease, each agreeing to pay his part of the expenses and share in the profits and losses. Wammack v. Jones, 103 Okla. 1, 229 Pac. 159; Barrett v. Buchanan, 95 Okla. 262, 213 Pac. 734; Gillespie v. Shufflin, 91 Okla. 72, 216 Pac. 132.

It is the contention of the plaintiffs in error that there was no co-operation between the parties in this case. They rely upon many cases from Oklahoma holding to the general principle that the owner of an oil and gas lease has a right to enter into a contract with another party for the purpose of drilling a well, and in payment thereof assigning an interest in the lease without constituting what is known as a mining partnership. Carson v. Waller, 127 Okla. 186, 260 Pac. 72; Wammack v. Jones, 103 Okla. 1, 229 Pac. 159; Gillespie v. Shufflin, 91 Okla. 72, 216 Pac. 132, and many other cases. We have examined each of the cases relied upon, and agree with the plaintiffs in error that the mere fact that an interest in the oil and gas lease is given to pay for the drilling of a well, does not, in itself, constitute a mining partnership; but in the case at bar there is something in addition to the contract.

Had the Robinson Company and Sol Robinson done nothing more than to enter into the contract above referred to, they would not have become liable for the materials furnished and the labor performed, and under the numerous decisions no partnership would have been formed.

But in this case Robinson ordered a large part of the material. He remained upon the lease, exercised authority over it, gave orders concerning it, introduced the man in charge of the drilling as his superintendent, and did many other things which proclaimed that he was co-operating with and helping the Union Company in the drilling of the well.

In the case of Wammack v. Jones, supra,

the general proposition is laid down that a mining partnership is never created solely by operation of law, but must exist by reason of a contract voluntarily entered into. This is, perhaps, the leading case on mining partnerships in Oklahoma, and is referred to frequently. However, the broad principle announced in that case has been departed from somewhat. In the recent case of McKay v. Kelly, 130 Okla. 62, 264 Pac. 814, it was held that a mining partnership did not exist by reason of an agreement, either expressed or implied, but arises from the relation and conduct of the parties. Whether or not a mining partnership exists, is largely a question of fact for a court or jury, taking into consideration the facts and circumstances surrounding each case. Cobb v. Martin, 32 Okla. 583, 123 Pac. 422.

While it often has been held that an agreement to assign an interest in a lease, in consideration of the drilling of a well thereon, does not constitute a mining partnership, even though the agreement further provides that if the well is productive the cost of future development shall be borne by the parties in proportion to their respective interests, in each case so holding the determination of the whole matter rested upon the contract itself, and in such cases there was no evidence that the parties sought to be charged held themselves out as partners.

From an examination of the record in this case, we think there is sufficient evidence to justify the trial court in determining that there was a co-operation between the plaintiffs in error and the Union Company for the purpose of drilling an oil well. And while there was no specific or definite agreement about the profits and losses, we believe that their acts and conduct toward the claimants who furnished material and labor were such as to make them each liable for the act of the other in the drilling of the oil well in question.

In our conclusion we think we are supported in the following cases: Schraeder v. Gormley, 127 Okla. 65, 259 Pac. 869; Young v. Krumme, 109 Okla. 145, 236 Pac. 606.

Young v. Krumme, supra, defines what constitutes a mining partnership in the syllabus thereof as follows:

"Where two or more parties become jointly interested in an oil and gas lease on certain lands, or in the operation and development of same, and one of the parties, in consideration of the interest to be assigned to him in said lease, agrees to drill a test

well, and another party in consideration of the interest assigned to him agrees to furnish the machinery and casing necessary for drilling the test, and it is further agreed that in case of production the entire lease shall be developed, and that the cost of operating, and of all future development of the lease shall be borne, pro rata, by the parties according to their interest, and the drilling of the test wells is proceeded with, held, that such conduct and agreement constitutes a mining partnership, and laborers and materialmen, performing labor, and furnishing material in furtherance of the adventure, are entitled to a lien on the leasehold and all machinery, and oil and gas well supplies and appliances, used in connection with such operations."

And in the body of the opinion, a quotation is given from Parsons on Partnership as follows:

"It is not necessary that the intention of being partners be expressed in words, for the law supplies the want of these words."

Plaintiffs in error criticize this opinion, and say that it should be overruled as the same is contrary to the holding of the many other decisions by this court. In the case of Brown v. Wasaff, 126 Okla. 164, 259 Pac. 246, it was held that the fact that an owner of a lease gave an interest therein for the purpose of having a well drilled did not make him a partner, where the well was to be drilled without expense to the lease owner, although there was an agreement that, in case of production, future developments should be borne by all parties as their interests appear; in other words, an agreement to form a partnership upon the happening of a future event. There were two opinions written in this case, the first one holding that a partnership existed, and following the Young v. Krumme Case, and, on rehearing, the final opinion held no partnership existed, and the Young Case is not mentioned. This plaintiffs in error contend is in effect an overruling of the Young Case.

We cannot say that this contention is sound, for the reason that this court, in the later case of Schraeder v. Gormley, 127 Okla. 65, 259 Pac. 869, again followed Young v. Krumme, using in substance almost the same syllabus.

Assuming that the Young v. Krumme Case goes a little further than most of the other cases by this court, we think the instant case presents a much stronger state of fact than was there presented, and is sufficient under all the decisions of our court. Here Robinson, who had authority to act for the Robinson Company, ordered material, took an active interest in the work, introduced a man as his superintendent, and was on the lease many times exercising apparent authority. In the Young v. Krumme Case, the opinion is apparently based on the contract alone, but here there are many acts which contradict the terms of the contract, and the contract was not recorded. True, Robinson says he was acting for the Union Company, but the court apparently found otherwise, and we think there is ample evidence to sustain the court's finding.

The judgment in the case at bar is general, and it cannot be determined with absolute certainty that the trial court found a mining partnership to exist, but under the oft-repeated and well-understood rule that a general judgment of the lower court carries with it any finding of fact necessary to support the judgment, we believe the lower court so found and determined, at least so far as the right of defendants is concerned. This being a question for a court or jury, and a jury being waived, if there is any evidence reasonably tending to support the finding and judgment of the trial court, the same will not be disturbed on appeal.

While our view as above expressed is not based entirely upon the ground that the plaintiffs in error are estopped from denying the existence of a partnership, it may be contended that we have rendered our opinion, at least to some extent, upon that theory. Plaintiffs in error contend that an estoppel cannot be relied upon in the instant case, for the reason that our court has often held that where a party relies upon an estoppel, in order to prevail, the estoppel must be pleaded. McKallip v. Geese, 30 Okla. 33, 118 Pac. 586; Ottawa County Nat. Bank v. Bouldin, 117 Okla. 104, 247 Pac. 434. However, it appears from the record that by amendment, at least one of the defendants in error, Mr. Aggers, did specifically plead an estoppel, and the claims of the defendants in error were tried jointly. Our attention is not called to any objection to the introduction of testimony on the ground that the testimony was not within the issues, and therefore, although an estoppel was not pleaded, the pleadings would be considered amended in accordance with the proof, if it be necessary to sustain the judgment of the lower court.

In our view of the existence of a mining partnership, it becomes unnecessary to discuss the other questions raised by this appeal. In a mining partnership, each party is liable for all work and material ordered by the other members of the partnership

which are reasonably necessary in the carrying out of the purposes for which the partnership exists. There is no contention in this case but what all material ordered was necessary for the purpose of developing the oil and gas lease in question, and each member of the partnership became personally liable regardless of who ordered the material or employed the laborers.

Under this view, all of the judgments should be sustained with the exception of L. M. Murray and R. W. McCoy. The uncontradicted evidence shows their claims are against W. H. Byron only. The judgment should be modified, granting a personal judgment against Byron only for the amount of their claims to be realized from his judgment against the plaintiffs in error and the Union Company, and to be a lien only concurrent with his lien.

So modified the judgment of the trial court is in all things affirmed.

REID, HERR, JEFFREY, and HALL, Commissioners, concur.

By the Court: It is so ordered.