**McANALLY et al. v. COCHRAN et al.**

No. 23314.　Jan. 29, 1935.

G. G. Hilford and Poe, Lundy & Morgan for plaintiffs in error.

Walker & Lewis, for defendants in error.

Henry R. Duncan, for defendant in error and cross-petitioner, F. W. Branigar.

Joseph C. Looney, for defendant and cross-petitioner in error M. W. Hampton.

BUSBY, J. This is an appeal from a judgment of the district court of Creek county. The controversy arose when certain claimants for labor and material used in drilling and equipping an oil well were refused payment.

The record shows that J. F. Root was the owner of a certain oil and gas lease on premises situated in Creek county, Okla., and that he made arrangements with J. S. Hoxie for the use of a string of tools and commenced to drill a well about April 6, 1930. For the use of the tools, Root agreed to ass'gn a one-eighth interest in the lease to Hoxie, who was in charge of the actual drilling of the well.

Prior to the commencement of the well, Root had assigned certain interests in the lease to B. Green, M. W. Hampton, F. L. M'ller, and Margaret Maben, and had promised to assign an interest to John Ball for labor to be performed on the well.

After the well was commenced and prior to the date of reaching the Skinner sand, Root made assignments of interest in the lease to Lena E. McAnally, A. H. Elder, Arthur Sory, and F. W. Branigar. The interest agreed to be given to F. S. Hoxie for the use of the tools was later executed to his wife, Elsie M. Hoxie. The interest conveyed to A. H. Elder was for labor performed in drilling the well.

Various claims for labor and material used in drilling and equipping the well were filed against the leasehold. Suit was thereafter filed by E. J. Cochran, one of the lien claimants, to foreclose his lien, and the other lien claimants were either made defendants or intervened. J. F. Root, F. S. Hoxie, and the various assignees of interest were made defendants in the su't, which was numbered 19070 and filed July 24, 1930.

On November 13, 1930, J. F. Root filed suit against his assignees and cotenants, asking for an accounting in cause No. 19319. The two causes were consolidated and tried under consolidated No. 19319, and judgment was rendered in favor of the original plaintiffs, cross-petitioners, and interveners, for the foreclosure of their liens and for personal judgment aga'nst the vari-

ous assignees and parties of interest in the leasehold estate for any balance due. Lena E. McAnally and Arthur Sory have appealed directly from the judgment of the court, and M. W. Hampton and F. W. Branigar have appealed by cross-petition in error.

All of the plaintiffs in error have assigned as error the holding of the court that they were members of a mining partnership, whereby the court rendered personal judgment against them. This assignment of error will be first considered.

The question of whether or not a mining partnership grew out of the relations of the parties of interest has frequently been before this court for determination. If a mining partnership exists in the instant case, it must have arisen by reason of an agreement, either express or implied, or arisen from the relation and conduct of the parties. Whether or not a mining partnership exists in any case is largely a question of fact to be determined from the facts and circumstances surrounding each case. There is no element of estoppel as to third parties involved here. Neither does any presumption of partnership arise from cotenancy in the ownership of the leasehold estate, nor from the mere operation of a mining lease by such cotenants.

As to what parties must do in order to create the relationship of a mining partnership, this court in the case of Gillespie v. Shufflin et al., 91 Okla. 72, 216 P. 132, held:

"In order to constitute a mining partnership, the parties must co-operate in developing a lease for oil and gas, each agreeing to pay his part of the expenses and to share in the profits or losses.

"Inter sese, there must be an intention of the partners to do so in order to create a partnership, and such intention cannot be inferred alone from a joint venture in drilling a well."

That rule was followed in Jones v. Sinclair Crude Oil Purchasing Co., 130 Okla. 182, 266 P. 439; Barrett v. Buchanan, 95 Okla. 262, 213 P. 734; Wammack et al. v. Jones, 103 Okla. 1, 229 P. 159; Ellis v. Lewis, 119 Okla. 201, 249 P. 295, and Robinson Petroleum Co. et al. v. Black, Sivalls & Bryson, Inc., 138 Okla. 128, 280 P. 593.

In Ash et al. v. Mickleson, 118 Okla. 163, 247 P. 680, this court held:

"A mining partnership or joint adventure cannot exist unless there is a co-operation among the parties in the development of a lease for oil and gas, each agreeing to pay his part of the expenses and to share in the profits and losses.

"Where it is the intention of the parties that a partnership is to become effective upon the happening of a certain contingency, or is to take effect at a future day, the relation of partners does not exist."

That holding has been followed by this court in Brown v. Wasaff, 126 Okla. 164, 259 P. 246; Carson et al. v. Waller et al., 127 Okla. 186, 260 P. 72; Irelan v. Smoot, 132 Okla. 270, 270 P. 29, and Tidal Oil Co. et al. v. Fullerton-Stuart Lumber Co., 137 Okla. 58, 278 P. 330; National Union Oil & Gas Co. et al. v. Richard et al., 164 Okla. 13, 22 P. (2d) 88; Murray Tool & Supply Co. et al. v. Bridgeport Mach. Co., 164 Okla. 136, 23 P. (2d) 165; Garber & Pulse, Inc., et al. v. Gloyd et al., 168 Okla. 88, 31 P. (2d) 947.

The mere holding of an interest in an oil and gas lease and leasehold estate with other cotenants and having knowledge that a well was being drilled thereon by one or more of the cotenants does not constitute "co-operation" as contemplated by the authorities herein cited. In Anderson v. Keystone Supply Co., 93 Okla. 224, 220 P. 605, this court defined what is meant by the term "co-operation" among the parties of interest in the development of an oil and gas lease. In that case Dillen and Anderson were cotenants in a leasehold. Dillen proposed to drill a well on the premises and to do the work himself if Anderson would pay him $1,150. Anderson accepted the proposition. Dillen reported to Anderson from time to time as to the progress made in the drilling of the well. The well was dry and the bills were not paid. Dillen told Anderson that all of the bills were paid. The claimants did not know of the agreement between Dillen and Anderson when the material was furnished. Anderson never had any dealings with any of the claimants, nor authorized Dillen to make any contract with the claimants. The drilling and all material furnished was at the instance of Dillen. This court held:

"A. and D. were cotenants of an oil and gas lease. The agreed statement of facts shows that D. contracted certain debts in the drilling of an oil well thereon; that the creditors had no knowledge of the agreement whereby A. and D. became cotenants; that A. had no dealings with such creditors personally, and did not expressly authorize D. to contract such indebtedness, but that

D. reported to A. the progress of the drilling from time to time; and that said debts were contracted by D. Held, no presumption arises from such cotenancy that A. and D. were mining partners, and, under said facts, they were not m'ning partners, and A. was not personally liable for such debts"

—and said:

"This court, in the recent case of Barrett v. Buchanan, 95 Okla. 262, 213 P. 734, has defined the relationship of mining partners inter sese. Under the authority of that case, it was necessary for Anderson and Dillon to 'co-operate in developing a lease for oil and gas, each agreeing to pay a part of the expenses and to share in the profits or losses,' to constitute a mining partnership. No definition of 'co-operate' is here attempted or necessary for the reason that the facts do not show that Anderson did anything whatever in conjunction with Dillen in the particular work of drilling this well, or procuring the drilling of the same whereby these debts were contracted. The co-operation under any definition of that term must be in the drilling of the well and not in the joint ownership of the lease. The agreed facts show that Dillen reported to Anderson from time to time, but we think this insufficient to show co-operation under any meaning of that term. * * *

"Under said facts there was no co-operation according to Barrett v. Buchanan, supra, between Anderson and Dillen in the particular matter of drilling the well or contracting said debts therefor. Anderson did not agree in any manner to pay any of said debts, nor is he estopped by any holding out. A mining partnership between them cannot be presumed from their cotenancy, and no specific authority of Dillen to bind Anderson is shown. We must therefore hold that Anderson and Dillen were not mining partners, and no agency ar'sing from partnership existed. Measured by the foregoing rules the defendants in error herein have wholly failed, under said statement of facts, to sustain the burden of proof on them necessary to support personal judgment against Anderson. Goodwin v. Kraft, 23 Okla. 329, 101 P. 856."

In the light of these authorities and well-established rule of this court, let us review the record in this case.

It was alleged in the petition filed by claimant E. J. Cochran in cause No. 19070 that the various owners of the leasehold estate were partners, and a personal judgment was asked for against all of the owners thereof, as well as for foreclosure of lien for material furnished. The answers and cross-petitions of the lien claimants John L. Flaugher, C. W. Weber, N. Wilson, S. B. McKinney, John Ball, Clyde McKinney, Dickason-Goodman Lumber Company, and F. S. Hoxie never alleged that a partnership existed between the owners of the lease. They base their claims upon an oral contract with J. F. Root or with Root and Hoxie, although they asked for a personal judgment against the various owners of the lease. The claimants Black, Sivalls & Bryson, Inc., and A. Pepis did allege that a partnership existed between the various owners of the lease. The answers and cross-petitions of the various owners of the leasehold estate denied the existence of any partnership relations by contract or otherwise existing between the owners of the lease. In the separate suit filed by J. F. Root (cause No. 19319) it was alleged that a partnership existed between himself and the other cotenants and an accounting and receivership was asked for.

Reviewing the testimony, we find that J. F. Root testified in substance that the well was commenced on April 6th and completed on May 10, 1930; that he (Root) drilled the well and rented the use of a string of tools from F. S. Hoxie; that witness hired the men and paid those who were paid; that after they started to rig up, Hoxie decided he would look after the tools and that witness drilled the well under the supervision of Hoxie; that witness had no written agreement with any one except what is shown in the assignments; that he didn't know Mr. Branigar and had never seen him; that Mr. Sory was on the leased premises at some time; that Mr. Elder worked on the well; that Mr. Green was never on the premises; that after the well was drilled in, Sory and McAnally were there, and that they with Hoxie talked to the witness, trying to figure what was best to do; that witness discussed with McAnally and Sory the advisability of making a well out of it at the Skinner sand, but witness didn't remember what was said; that witness looked after the purchase of material and the making of contracts for operation; that he presented bills to all of the other leasehold owners, but none of them responded with payment; that he never took up with his co-owners the matter of the account with Hoxie for the expenses on his machine, since Hoxie was to have a one-eighth interest for the use of the machine; that until they got a well the other cotenants didn't come in on the expense; that witness was to furnish that himself;

that Hoxie, Sory, and McAnally all claimed to be pleased with the well and expressed different views as to the number of barrels it would make; that Mr. Hampton was at the well on Sunday, five or six days after it came in, and asked witness what the well would make.

F. S. Hoxie testified in substance that Sory and 'McAnally came to the well while they were drilling, but gave no instructions; that Root, McAnally, and Sory were all at the well when drilling was stopped at the Skinner sand; that witness might have discussed with Sory in a general way the prospects of a well in the Skinner sand; that since the well came in witness had a conversation with Elder in regard to selling the oil; that Sory objected to signing the division order and that there was a disagreement among the leasehold owners; that something came up in regard to the well being drilled and they had a dispute; that the well was not as large as they expected.

It is quite useless to quote from the great volume of testimony shown in the record, most of which is in support of the accounts presented by the various lien claimants. There is no evidence in the record that shows or tends to show that the owners of the leasehold estate ever contemplated a partnership among the various owners of the lease at the time they purchased an interest in same, some of which were before the well was ever begun. Neither does the evidence show or tend to show that there was any such agreement between the parties during the progress of the drilling of the well, nor as to the operation and management of the well after production was found. The parties never came together for the purpose of perfecting such an arrangement. J. F. Root and F. S. Hoxie had exclusive control during the drilling of the well and with no authority to act for any other cotenant, and the same is true after they had reached the Skinner sand and had decided to make a well therein. It is not shown that any of the other parties in interest was ever consulted about employing labor for cleaning the well or doing any of the other many things necessary to be done at a new well, or in purchasing tankage or other equipment necessary therefor. Neither does the testimony show that the parties in charge had any authority to act for others. It is not shown that the various parties in interest gave their consent to stop the well at the Skinner sand, but it is shown that a disagreement among the owners of the leasehold estate arose on that account.

The record shows that a great portion of the claims involved here are for labor performed and material furnished since the well was completed. It is true that the well was never drilled to Bartlesville sand and was never formally. accepted by most of the parties of interest in the lease as a compliance with the terms stated in the assignments of interest. It is also true that the well was completed at the Skinner sand and material purchased, such as tanks, piping and necessary material for running and marketing the oil from the well. Arrangement was made for the sale of the oil, and several of the parties in interest in the lease signed a division order and transfer order. The record does not show that any of the parties of interest refused or would refuse to accept their portion of the income from the oil produced from the well in the Skinner sand. We do not think that the record would justify us in saying that the acts of the various parties of interest in the lease, since the well was developed in the Skinner sand, were such as would constitute a mining partnership. It is true, however, that a liability for such material and labor has accrued against the separate interest in the leasehold estate together with all property belonging to the leasehold estate. Section 10978, O. S. 1931; Brewer v. Oil Well Supply Co. et al., 126 Okla. 108, 258 P. 866; Brown v. Neustadt, 145 Okla. 140, 292 P. 73; International Supply Co. v. Conn, 119 Okla. 130, 249 P. 900. That being true, no personal judgment can be obtained against the cotenants in the leasehold estate other than those who contracted for the material and labor. Anderson v. Keystone Supply Co., 93 Okla. 224, 220 P. 605.

The various assignments of interest in the lease by Root contained the clause:

"A well to be drilled to and through the Bartlesville sand, free of cost to the assignee, but assignee to pay his proportionate share of cost of tubing and casing left in the well."

That is the only writing or expression of any kind shown by the record that would indicate the intent of the parties. Some of the interested parties were never on the leasehold estate prior to this suit. Others were there as spectators merely, as they had a right to be, and none exercising authority. We cannot but conclude that if

a partnership was ever contemplated by the parties, it was to take effect after the payment of all bills incurred for the drilling of the well, and after oil should be found in paying quantities, and even then after the minds of the parties had met with mutual assent concerning the operation and management of the well. None of these contingencies ever developed into a reality. Furthermore, it is not shown that any party in interest in the lease ever held himself out to the public as a member of an existing partnership, nor that any claimant furnished labor or material under such impression or reliance on the existence of such a partnership.

The plaintiffs in error contend that the trial court committed error in consolidating and trying the two causes of action together, and in failing to submit the issues raised in cause No. 19070 to a jury. These contentions are not without merit, but it appears that emphasis is placed thereon due to the fact that the trial court found that a mining partnership existed among the various cotenants in interest, and rendered personal judgment against them. Having reached a different conclusion, it will not be necessary here to consider further the alleged errors.

It is contended on the part of cross-petitioner in error F. W. Branigar that the trial court erred in consolidating the two causes of action for trial and rendering a personal judgment against him, when the court had no jurisdiction over the person of the cross-petitioner in error in cause No. 19319. Technically considered, this contention is also not without merit. It is shown, however, from the record, that Banigar announced ready for trial in cause 19070, in wh'ch he had been duly served with process. In that case the existence of a partnership was alleged and a personal judgment had been asked for against the various cotenants. In cause No. 19319, filed by J. F. Root, an accounting was asked for among the various cotenants for adjusting cla'ms both due and paid and for the appointment of a receiver. It cannot be successfully contended that the entire judgment rendered in the consolidated cause under No. 19319 was on issues raised in the particular case which was filed by J. F. Root. It is shown in the judgment of the court that a personal judgment in favor of J. F. Root was rendered against the various cotenants in an accounting for money which Root had paid out in the drilling of the well. This sum amounted to $130 with interest and $50 attorney fees. That part of the judgment was also based upon the theory that a mining partnership existed during the progress of the drilling of the well and was error.

There seems to be no contention here relative to the amounts due the various lien claimants as shown in the judgment of the court, and that part of the judgment is sustained. That part of the judgment declaring a lien against the leasehold estate in favor of the materialmen and laborers furnishing material and labor after the well was drilled in is sustained. That part of the judgment holding that a mining partnership existed between the cotenants in interest of the leasehold estate, both before and after the completion of the well, and rendering personal judgment against the plaintiffs in error, Lena E. McAnally and Arthur Sory, and cross-petitioners in error. F. W. Branigar and M. W. Hampton is hereby reversed, and the cause is remanded, with directions to proceed in accordance with the views herein expressed.

McNEILL, C. J., and RILEY, PHELPS, and GIBSON, JJ., concur.