CONTINENTAL SUPPLY CO. v. DICKSON OIL CO.

No. 31231. Oct. 10, 1944.

Rehearing Denied Dec. 19, 1944.

*153 P. 2d 1017.*

Martin, Logan, Williams & Boesche, Robert J. Stanton, and Richard P. Ryan, all of Tulsa, for plaintiff in error.

Butler & Rinehart, of Oklahoma City, for defendant in error.

ARNOLD, J. J. W. Criswell was the owner of certain oil and gas leases covering land located in Pontotoc county, Okla. On August 10, 1940, he wrote a letter to C. C. Harwell, one of the defendants, agreeing to assign said leases to him if he commenced a test well for oil and gas thereon on or before September 5, 1940. He reserved a 1/16th of the 7/8ths as an overriding interest.

On August 14, 1940, Harwell wrote the following letter to John E. Dickson:

"Oklahoma City, Oklahoma, August 14, 1940.

"Mr. John E. Dickson,
"First National Building,
"Oklahoma City, Oklahoma.

"Dear sir:

"Attached hereto is a letter directed to me, signed by J. W. Criswell, and accepted by me, by the terms of which letter I am to acquire commerical oil and gas leases on one hundred acres of land located in Sections 28 and 33, Township 5 North, Range 5 East, Pontotoc County, Oklahoma; and by the terms of which letter I am to commence, or cause to be commenced, the drilling of a test well on said premises on or before September 5, 1940, and to continue, or cause to be continued, such drilling operations with due diligence until said test well is completed.

"You will note there is an overriding one-sixteenth interest to be reserved out of and from said leasehold estate.

"In consideration of your executing a bottom-hole letter to Phil A. Cornell of Oklahoma City, Oklahoma, in the amount of $2,000.00 cash, I hereby contract and agree, and by the terms of this letter do bind myself to assign to you a one-half interest in and to 13/16ths of the gross production from said premises, your interest to be proportionately subject to the $5,000.00 oil payment made in favor of Phil A. Cornell. You are to pay your one-half of the cost of a flow string of pipe and the setting thereof, and your propor-

tionate part of the cost of operation of said premises.

"Should we obtain commercial production, you and I will jointly, operate the property until a more satisfactory arrangement can be worked out.

"Yours very truly,

(Signed) "C. C. Harwell."

On the same day the Dickson Oil Company wrote a letter to Phil A. Cornell wherein it was stated that the company would pay to Cornell the sum of $2,000 when he had completed his part of the drilling contract entered into on the 14th day of August, 1940, with C. C. Harwell. It was also stated therein that said payment was in consideration of the assignment unto the company of an undivided ½ interest in the oil and gas leases and was subject to a showing of merchantable title in said leases. On September 6, 1940, the Dickson Oil Company notified Mr. Cornell that the title to the leases had been approved and that he could consider the bottom-hole letter of August 14th binding.

On August 14, 1940, Phil A. Cornell, as contractor, and C. C. Harwell, as owner, entered into a drilling contract whereby the contractor was to drill the well on the above referred to leases. As a part of the consideration for the drilling of the well it was provided that the owner would furnish the contractor a bottom-hole letter from John E. Dickson in the amount of $2,000 to be paid when the contractor drilled the well into the Viola lime at least 50 feet. The owner also agreed to pay the contractor the sum of $2,000 when the same depth was reached. For further consideration the contractor was to receive an oil payment in the amount of $5,000 payable out of ¼th of 13/16ths of the gross production free and clear of all costs.

On September 5, 1940, the above referred to leases were assigned to C. C. Harwell. On September 19, 1940, C. C. Harwell assigned an undivided ½ interest in and to the 13/16ths interest of. Harwell in said leases to the Dickson Oil Company.

On November 2, 1940, the Dickson Oil Company and C. C. Harwell executed an oil payment in the amount of $5,000 in favor of Phil A. Cornell.

The well was commenced on or about September 5, 1940, and completed in the early part of November, 1940. During October and November certain materials were furnished by the Continental Supply Company which were charged to Harwell and Dickson. The bill therefor was not paid and the supply company filed a materialman's lien against the lease.

A suit was filed by another party to foreclose a materialman's lien against the lease. The Continental Supply Company intervened setting up its materialman's lien and asked for a personal judgment against C. C. Harwell and the Dickson Oil Company. The Dickson Oil Company denied that it was personally liable for the bill.

The testimony in behalf of the supply company was that it refused to sell material placed on the lease to C. C. Harwell alone; that it billed the material out to Harwell and Dickson; that the field superintendent of the Dickson Oil Company ordered some of the material and accepted delivery of same; that said field superintendent advised it that such material should be charged to Harwell alone, which it refused to do; that the superintendent ordered and accepted material; that it was notified by Mr. Dickson that the material should not be charged to the Dickson Oil Company, but that such notification was received after a large amount of the material had been delivered; that Mr. Dickson was seen around the well a number of times.

Mr. Dickson testified that he was at the well only once and had nothing to do with the drilling of same; that his field superintendent worked at the well only after it was ready to be brought in; that Harwell had no authority to

charge anything to him or purchase anything in his name; that he was to pay only one-half of the cost of the flow string of pipe and his proportionate part of the cost of operation; that the Continental Supply Company at no time contacted him with reference to the material purchased by Harwell.

Harwell testified that the Dickson Oil Company wasn't to have anything to do with the well until it was completed; that Mr. Dickson exercised no control over the drilling operations; that he purchased the string of pipe from the Continental Supply Company; that at the time he purchased the pipe he told the company that it was to be charged to him and that Mr. Dickson would pay him; that he didn't have any authority to charge anything to the joint account of himself and Dickson; that he instructed the supply company to charge the pipe to him; that he acknowledged receipt of the pipe upon the purchase orders made out to Harwell and Dickson; that he didn't give the supply company authority to make out the account in the name of C. C. Harwell and Dickson.

Mr. Cornell testified that Dickson was not around the well until after it had been drilled to 2,000 feet; that he was there when the well was completed; that he took his orders from Mr. Harwell.

The trial court entered judgment foreclosing the materialman's lien; however, it did not enter a personal judgment against the Dickson Oil Company. The Continental Supply Company appealed.

The sole question presented here is whether or not the evidence shows that C. C. Harwell and the Dickson Oil Company were mining partners.

The Continental Supply Company relies largely upon that part of the letter from Harwell to Dickson in which it is stated:

"You are to pay your one-half of the cost of a flow string of pipe and the setting thereof, and your proportion-ate part of the cost of operation of said premises."

And also upon Mr. Dickson's testimony that:

"I made a deal with Mr. Harwell to pay half of the drilling contractor's fees for cutting the hole and then if it was a producer I was to furnish part of the equipment to produce it and he was to furnish a part of the equipment. One of the reasons for that was that I had a part of the equipment on hand;"

Where the parties co-operate in developing a lease for oil and gas, each agreeing to pay his part of the expenses and to share in the profits or losses, a mining partnership exists. However, a mere community of interest as owners of specific property or the profits from a particular adventure or business does not necessarily, of itself, constitute the co-owners partners. Gillespie v. Shufflin, 91 Okla. 72, 216 P. 132; Jones v. Sinclair Crude Oil Purchasing Co., 130 Okla. 182, 266 P. 439; Barrett v. Buchanan, 95 Okla. 262, 213 P. 734; Wammack v. Jones, 103 Okla. 1, 229 P. 159; Ellis v. Lewis, 119 Okla. 201, 249 P. 295; Robinson Petroleum Co. v. Black, Sivalls & Bryson, Inc., 138 Okla. 128, 280 P. 593; Ash v. Mickleson, 118 Okla. 163, 247 P. 680; McAnally v. Cochran, 170 Okla. 368, 46 P. 2d 955.

Where the existence of a mining partnership is a matter to be determined by inferences from all the evidence, it is a jury question (Harmon v. National Supply Co. of Kansas, 65 Okla. 259, 166 P. 80; McAnally v. Cochran, supra); if the facts are undisputed or a written instrument is the only evidence on the subject, the question of the existence of a partnership is for the court's determination. Hawkins v. Mattes, 171 Okla. 186, 41 P. 2d 880; Whitney v. Harris, 169 Okla. 288, 36 P. 2d 872. The statement concerning the testimony in the record indicates the facts were in sharp dispute. The existence of the alleged mining partnership in this action had to be determined by inferences from all the evidence. The case was tried to the court without intervention of a jury.

In a law action the verdict of the jury or the judgment of the court, where such a case is tried to the court, will not be disturbed by us if there is any competent evidence reasonably tending to support the verdict or judgment. McCullough v. Simpson, 173 Okla. 290, 48 P. 2d 276; Okmulgee Building & Loan Assn. v. Cutler, 174 Okla. 614, 51 P. 2d 709; Illinois Bankers Life Assn of Monmouth, Ill., v. Palmer, 176 Okla. 514, 56 P. 2d 370; Leckie v. Dunbar, 177 Okla. 355, 59 P. 2d 275, and other cases. The evidence together with the reasonable inferences to be drawn therefrom reasonably supports the judgment of the court holding that the Dickson Oil Company was not a partner of Harwell. It was not therefore personally liable for the claim of the plaintiff.

Judgment affirmed.

CORN, C. J., GIBSON, V. C. J., and RILEY and HURST, JJ., concur.