**CARSON et al. v. WALLER et al.**

No. 17873. Opinion Filed June 21, 1927.

Rehearing Denied Oct. 25, 1927.

(Syllabus.)

1. **Mines and Minerals—Essentials of Mining Partnership or Joint Adventure.**

A mining partnership or joint adventure cannot exist, unless there is a co-operation among the parties in the development of a lease for oil and gas, each agreeing to pay his part of the expenses and to share in the profits and losses.

2. **Partnership—Nonexistence of Relation Where Mere Intent to Form in Future.**

Where it is the intention of the parties that a partnership is to become effective upon the happening of a certain contingency, or is to take effect at a future day, the relation of partners does not exist.

3. **Oil and Gas—Liens Against Leaseholds—Rights of Materialman Under Subcontractor.**

By reason of sections 7464 and 7466, Comp. St. 1921, a lien is given in favor of a materialman, under a subcontractor, from the same time and in the same manner and to the same extent as if the materialman had furnished the material at the instance of the original contractor. But where there is no primary liability existing from the leaseholder to the original contractor. there cannot, under said sections, be a lien in favor of a materialman under a subcontractor.

4. **Mines and Minerals—Contract not Constituting Mining Partnership.**

For contract held not to constitute a mining partnership, see opinion.

Commissioners' Opinion, Division No. 2.

Error from District Court Kingfisher County; James B. Cullison, Judge.

Action by Gordon Waller, Clyde Pool, and C. H. Marsh against W. A. Carson, D. B.

Malernee, Guy Blackwelder, W. C. Brissey, Fred Payne, and Will Gieanger. Judgment for plaintiffs and against defendants W. A. Carson, D. B. Malernee, and Will Gieanger. The defendants W. A. Carson and D. B. Malernee bring error. Reversed and remanded, with directions.

Edward Dewes Oldfield and A. S. Wells, for plaintiffs in error.

A. H. Meyer, for defendant in error C. H. Marsh.

Geo. L. Bowman, for defendants in error Gordon Waller and Clyde Pool.

HERR, C. The parties will be referred to in this opinion as plaintiffs and defendants, as they were designated in the trial court.

The defendants W. A. Carson and D. B. Malernee were the owners of a block of oil and gas leases located in Kingfisher and Logan counties, and on the 9th day of September, 1924, entered into a drilling contract with the defendant Will Gieanger to drill a test well on the southeast quarter of the southeast quarter of section 25, township 17 north of range 5 west, in Kingfisher county. Said contract is as follows:

"This contract made and executed in triplicate this 9th day of September, 1924, by and between W. A. Carson of Oklahoma City, and D. B. Malernee of Walters, Okla., as parties of the first part, and Will Gieanger of Davidson, Okla., as party of the second part.

"Witnesseth, that parties of the first part are owners of a block of leasehold estate for oil and gas purposes in township 17 north ranges 4 and 5 west of the Indian Meridian. in Kingfisher and Logan counties, Okla., and have prosecuted the drilling of a well on said tract on the southeast quarter of southeast quarter of section 25. township 17 north range 5 west. I. M., to a depth of approximately 2.250 feet, and it is desired by the contracting parties hereto that the well be completed by party of the second part, upon the terms and conditions as hereinafter set forth.

"Parties of the first part agree to furnish to the party of the second part the practically complete rotary rig and outfit now installed at said described well. together with the tools and appliances belonging to the same. the said rig being the Fred Payne drilling rig.

"The party of the second part, upon receiving said rig, tools and appliances is to immediately proceed to drill said hole and complete the well to the total depth of 2.000 feet, unless oil or gas in paying quantities be found and produced at a lesser depth; and it is understood and agreed that if cas-

ing is to be set in said well, that party of the second part shall properly set casing as directed by parties of the first part, and cement same, if desired.

"Party of the second part agrees to return the said rotary rig and outfit to Fred Payne in as good condition as when received, reasonable wear and tear excepted; and agrees to replace any parts that are lost or stolen; and such other tools or appliances as he may need for the prosecution of the drilling of said well, other than those furnished with said rig must be purchased by party of the second part at his sole cost and expense.

"The said drilling work shall be begun within ten days from the date hereof and shall be prosecuted continuously to the completion of said well, unavoidable accident excepted. All drilling expenses of every kind and character, including all labor, material, fuel and water, are to be borne solely by party of the second part, and it is understood and agreed that parties of the first part shall in no manner nor in any amount be liable for any such expense, nor shall their said leasehold estate or any improvements thereon be chargeable with such expense or subjected to any liens for labor or material.

"It is expressly understood that party of the second part shall carry compensation insurance as provided by the laws of this state, and that in the hiring of laborers that the contracts therefor are solely the contracts of the party of the second part ond such laborers; and that parties of the first part and Fred Payne, as owner of said rig so leased for use, are in no wise responsible in any manner in connection with said contracts.

"Party of the second part agrees that parties of the first part shall be furnished, at all times, upon request, with cuttings from the well, and agrees to run a chore barrel for testing purposes, when requested so to do, and furnish a log and other information of the drilling conditions as the work progresses.

"As his sole compensation for the services agreed to be performed by him, party of the second part is to receive, upon the completion of the well as hereinbefore defined, the assignment of a purchase order from the Carter Oil Company to parties of the first part in the sum of $6,000,000 payable when the well is completed to a depth of 3,000 feet, or a commercial well is obtained at a lesser depth, and he shall also receive an assignment conveying to him an undivided one-fourth interest in and to the contract where the well is located, to wit: The southeast quarter of the southeast quarter of section 25, township 17 north, range 5 west, I. M.) S. E. ¼ of S. E. ¼ of sec. 25, twp. 17 north, R. 5 west I. M.), and there shall also be delivered to party of the second

part good and valid assignments of oil and gas leasehold estates covering the following tracts in said block, to wit:

"(1) The east one-half of the northeast quarter of section 36, and,

"(2) The east half of the southwest quarter of section 36, and of the northeast quarter of section 36, and,

"(3) The west one-half of the northeast quarter of section 26; all in township 17 north, range 5 west, I. M. and,

"(4) The north half of the southeast quarter of section 31, and,

"(5) The north half of the northeast quarter of section 30; all in township 17 north, range 4 west, I. M.

"As to the last five described tracts, of which assignments are to be made to the party of the second part, it is understood and agreed that any or either of said assignments will be delivered to party of the second part for sale, or to such person as he may direct as assignee, at any time while drilling is progressing, provided that the proceeds of such sale of any of said leases shall be deposited in a special fund in the Bank of Crescent, Okla., such fund to be checked upon only for the purpose of paying the necessary drilling expenses of said well, it being understood and agreed that in any event that all the leases not sold shall be delivered at the completion of the well, and the unused proceeds of said lease or leases sold shall, upon the completion of the well, be also delivered to party of the second part.

"Prior to the completion of the well said trust fund, for the purposes stated only, may be checked upon by party of the second part, all of such checks to be countersigned by R. W. Carson as agent of the parties of the first part.

"Should said well become a commercial well, it is agreed that party of the second part shall pay his proportionate one-fourth part of the further development and operating expenses of said lease, and if casing is set in said well he shall pay his proportionate one-fourth part of the expense of such casing; all future development or operating expenses to be determined by a majority of the interests owned and held in said leasehold estate; all oil and gas runs accruing to the interest of party of the section part shall be by appropriate division order assigned to the parties of the first part for any indebtedness remaining unpaid at any time chargeable to the interest of the party of the second part.

"It is further agreed that at any time that a bona fide sale of said property may be had, and such sale agreed upon as to prices and conditions by a majority of the interests in said lease, or leases, party of the second part agrees to join his interests in

said property in such sale, sharing his proportionate part of the agreed sale price.

"In witness whereof the parties hereto have hereunto set their hands this the 9th day of September, A. D. 1924.

"W. A. Carson and D. B. Malernee, "Parties of the First Part.

"Will Gieanger, "Party of the Second Part."

The said defendant Gieanger employed the plaintiffs herein as laborers in and about the drilling of said well. The said well was not completed as provided by the terms of the contract, but was abandoned by the said Gieanger, and the plaintiffs have never been paid for their services.

Thereafter, the said plaintiffs filed laborers' liens against the leasehold interests of the said defendants Carson and Malernee, in and to the said leases mentioned in said contract, and on the 3rd day of September, 1925, filed their separate actions against the defendants Carson, D. B. Malernee, Guy Blackwelder, W. C. Brissey, Fred Payne, and Will Gieanger, to recover their wages and to foreclose their laborers' liens against the leasehold interests of the said defendants Carson and Malernee.

At the trial, said causes were consolidated and judgment was rendered in favor of the plaintiff Gordon Waller for the sum of $737.50, in favor of the plaintiff Clyde Pool for $512.25; and in favor of the plaintiff C. H. Marsh for the sum of $968, together with attorneys' fees. Said judgments were rendered against the defendants Carson, Malernee, and Will Gieanger; and further judgment was rendered decreeing a foreclosure of the laborers' liens in favor of the plaintiffs, and against the defendants above named. A demurrer to the evidence was sustained as to the defendants Guy Blackwelder, W. C. Brissey and Fred Payne.

At the conclusion of the evidence, the defendants Carson and Malernee also demurred to the evidence, which demurrer was by the court overruled, and judgment rendered against the defendants as above stated. The defendant Will Gieanger made no defense. To reverse these judgments against them. the defendants Carson and Malernee appeal to this court.

It is our opinion that the demurrer of said defendants to the evidence should have been sustained. · It is clear from the testimony of the plaintiffs, themselves, that their contract of employment was with the defendant Will Gieanger alone. Neither of the plaintiffs ever saw or talked with defend-

ants Carson and Malernee prior to their employment. The evidence does not establish that the defendants Carson or Malernee at any time held themselves out to these plaintiffs, or any other person as partners with defendant Gieanger, in this drilling enterprise.

It is contended, however, by the plaintiffs, that the contract in itself creates what is termed a mining partnership, and in their brief they discuss two paragraphs of said contract which they contend are sufficient in law to constitute said contract a partnership contract.

It is contended that the paragraph in said contract providing for the assignment of said leases to the said Will Gieanger, coupled with the provisions that the proceeds arising from the sale of said leases should be deposited in a special fund in the Bank of Crescent, Okla., to be checked out only for the purpose of paying drilling expenses, and the further provision that prior to the completion of the well said funds should be held in trust for such purpose only and could only be checked upon when such checks were countersigned by R. W. Carson, as agent for W. A. Carson, defendant herein, creates a partnership among and between the defendants Carson, Malernee and Gieanger.

We think this contention cannot be sustained. In our opinion the mere fact that the defendants Carson and Malernee assigned these leases to the driller, Gieanger, as part payment for the drilling of said well, instead of paying said amount in cash, and took the extra precaution to see that the money derived from the sale of said leases should go towards the liquidation of expenses incident to the drilling of the well, in no wise makes said defendants partners with said Will Gieanger.

It is said by this court, in the case of Wammack v. Jones, 103 Okla. 1, beginning on page 2; 229 Pac. 159:

"It is not contended that the defendants Wammack and Lindley held themselves out to be partners in this drilling enterprise, or that they had anything to do with the employment of the plaintiff. They simply made a contract with the defendant Settle to drill a test well upon their leasehold estate. and instead of paying in cash agreed to and did assign to the said defendant a fixed interest in the said estate. Of course. all of the parties owned an interest in this lease and were interested in having the test well drilled, but this did not make them partners."

Counsel for plaintiff herein also called at-

tention to the following paragraph of the contract:

"Should said well become a commercial well, it is agreed that party of the second part shall pay his proportionate one-fourth part of the further development and operating expenses of said lease, and if casing is set in said well he shall pay his proportionate one fourth part of the expenses of such casing; all future development or operating expenses to be determined by a majority of the interests owned and held in said leasehold estate; all oil and gas runs accruing to the interest of the party of the second part shall be by appropriate division order assigned to parties of the first part for any indebtedness remaining unpaid at any time chargeable to the interest of the party of the second part."

It is contended that this paragraph of the contract is sufficient, in itself, to create a partnership between the parties thereto. This contention has been decided adversely to the claim of the plaintiffs, by this court, in the following cases: Gillespie v. Shufflin, 91 Okla. 72, 216 Pac. 132; Wammack et al. v. Jones, 103 Okla. 1, 229 Pac. 159; Ellis et al. v. Lewis et al., 119 Okla. 201, 249 Pac. 295; Ash v. Mickelson, 119 Okla. 163, 247 Pac. 680.

In the last cited case the court held as follows:

"A mining partnership or a joint adventure cannot exist, unless there is a co-operation among the parties in the development of a lease for oil and gas, each agreeing to pay his part of the expenses and to share in the profits and losses. * * * Where it is the intention of the parties that a partnership is to become effective upon the happening of a certain contingency, or is to take effect at a future date, the relation of partnership does not exist."

And in the case of Wammack v. Jones, supra. it is said by the court:

"It is undoubtedly true that a partnership in praesenti may be constituted by an agreement if it appears that such was the intention of the parties. But, where it expressly appears that the arrangement is contingent, or to take effect at a future date, it is well settled that the relation of partners does not exist, and that, if one or more of them refuse to perform the agreement, there is no remedy between the parties except a suit in equity for specific performance. or an action at law for the recovery of damages should any be sustained."

In our opinion, under the above authorities. it is clear that the contract in question does not constitute a partnership contract. This being true, the defendants Carson and Malernee are not personally liable to the plaintiffs in this action, and no personal judgment can be rendered against them.

Under the terms of the contract, the said Gieanger was to receive nothing except the assignment of the leases hereinbefore referred to—and the evidence discloses that all funds derived from the sale of said leases were expended in payment of drilling expenses—until said well was completed according to the terms of the contract. Said well never having been completed, no liability existed against the defendants Carson and Malernee, the owners of the leasehold estate, in favor of Gieanger, the contractor. Therefore, the leasehold interests of the said defendants are not subject to laborers' liens in favor of the plaintiffs. Brenner Oil Co. et al. v. Dickason-Goodman Lumber Co., 108 Okla. 257, 236 Pac. 44; Cameron Refining Co. v. Jerman, 110 Okla. 272, 238 Pac. 437,

In the case last above cited, the following rule is laid down:

"By reason of sections 7464 and 7466, Comp. St. 1921, a lien is given in favor of a materialman, under a subcontractor from the same time and in the same manner and to the same extent as if the materialman had furnished material at the instance of the original contractor. But where there is no primary liability existing from the leaseholder to the original contractor, there cannot, under said sections, be a lien in favor of a materialman under a subcontractor."

In the case above cited, the Brenner Oil Company was the owner of an oil and gas lease, and contracted with A. R. Simons to drill a well on said lease, the said Simons to receive nothing except upon full and complete compliance with his said agreement. The said Simons entered into a contract with one Ferguson to drill the well. Said Ferguson failed to complete the well in accordance with the terms of the contract, and during the process of drilling he purchased certain material from the Dickason Goodman Lumber Company. The said lumber company filed materialman's lien against the leasehold interest of the Brenner Oil Company. and sought to foreclose said lien. It was held in said case, opinion by Justice Branson, now Chief Justice. that the action could not be maintained against the Brenner Oil Company. The same conclusion was arrived at in the case of Cameron v. Jerman, supra.

Under these authorities, the court erred in decreeing foreclosure of the liens against the leasehold of the defendants Carson and Malernee.

The evidence discloses that the defendant

Gieanger still retains 80 acres of the five tracts assigned to him under the terms of the contract, and, of course, plaintiffs are entitled to decree foreclosing their liens as to said tract provided said tract is included within their lien statement.

As to the defendants Carson and Malernee, the judgment should be reversed, and the cause remanded, with directions to sustain the demurrer to the evidence and enter judgment in favor of said defendants.

BENNETT, HALL, JEFFREY, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 40 C. J. pp. 1143, 1145 §798; 20 R. C. L. p. 1058. (2) 40 C. J. p. 1144, §797; 30 Cyc. p. 358; anno. 18 L. R. A. (N. S.) 978; 20 R. C. L. p. 832; 3 R. C. L. Supp. p. 1104; 4 R. C. L. Supp. p. 1379; 5 R. C. L. Supp. p. 1127; 6 R. C. L. Supp. p. 1237. (3) 40 C. J. p. 1169, §848. (4) 40 C. J. p. 1144, §797.