## NATIONAL UNION OIL & GAS CO. et al. v. RICHARD et al.

No. 20700. Opinion Filed May 16, 1933.

J. E. Curran, S. H. King, and M. E. Haight, for plaintiff in error Harris & Haun, Inc.

A. L. Squire, for plaintiff in error National Union Oil & Gas Company.

M. L. Opperud and O. B. Martin, for defendant in error Floyd E. Richard.

Peyton E. Brown, for defendant in error J. H. Pritchard.

WELCH, J. In the trial court this action involved the rights of Floyd E. Richard, W. L. Nuckolls, and J. H. Pritchard, hereinafter called claimants, to recover from the two defendant corporations, National Union Oil & Gas Company, a corporation, and Harris & Haun, Inc., a corporation, for work and labor performed by the claimants in the drilling of a certain gas well in Kay county.

The claimants were employed to do the work by J. E. (Jim) Miller. They did the work, filed their lien claims, and sought foreclosure in this action.

There was no dispute as to the liability of Miller, and no one disputed the correctness of the accounts of the claimants. At the beginning of the trial claimants had judgment against Miller, and claimed the right to recover also from the two defendant corporations, upon the theory that the individual, J. E. Miller, and the two corporations, National Union Oil & Gas Company, a corporation, and Harris & Haun. Inc., a corporation, were copartners and that a mining partnership existed between the three of them in the development of the oil and gas lease in question.

Substantially the only question in the trial court was whether or not the two defendant corporations were mining partners with J. E. Miller. If such a partnership existed, defendant corporations were liable. If it did not exist, the two defendant corporations were not liable.

Upon this issue trial was had to a jury, resulting in a verdict and judgment against both of the defendant corporations for the sums sued for by claimants, and foreclosure of the liens.

The defendant corporations in the trial court denied that any partnership whatever existed, and excepted to the judgment against them and prosecute this appeal.

The oil and gas lease on the land in question was held by the White Eagle Oil & Gas Company. This lessee entered into a contract with J. E. Miller, assigning to him the gas rights but the White Eagle Company, lessee, kept the oil rights. The contract provided that Miller was to drill a well for gas, and if he got gas, the White Eagle Company, the lessee, was to have one-eighth of the gas free of costs, and Miller was to drill the well free of cost to the White Eagle Company, with the provision that if the well drilled by Miller was a producing oil well, the White Eagle Company had the right to take over the same by paying Miller his costs and expense of drilling.

J. E. Miller then assigned a one-half interest in the gas rights to Harris & Haun, Inc. For this one-half interest Harris & Haun agreed to pay Miller by furnishing him the pipe necessary to drill the well, and to furnish him the necessary fuel gas to be used in drilling the well. This was by written contract providing that Miller was to drill the well at his own expense, and to pay all labor and other expenses in drilling, and with these further provisions: That in the event the well drilled by Miller should be a dry hole, he should pull the casing at his own expense; that, in case the well should be a producer of gas, Miller should pay Harris & Haun for the pipe used in the well at the market price for used pipe out of his share of the first gas produced; that in case said well should be a producer of oil, and should be taken over by the White Eagle Oil & Gas Company, then that Harris & Haun should be reimbursed for the casing at the market price for used pipe, and in addition thereto should receive one-half of the proceeds received by Miller from the White Eagle Company; that, in case such well should be a producer of oil, and the White Eagle Company should not elect to take over the same, then that Harris & Haun should be entitled to an undivided one-half interest in the oil well and be paid for its casing; that, in the event said well produced gas in commercial quantities, Harris & Haun should have the prior right to purchase all of the gas belonging to Miller at the prevailing market price for gas in the particular field; that nothing contained in the agreement should be considered as a partnership of any kind or nature whatsoever, and that the interest of each of the parties should be owned by them respectively.

Miller also assigned an additional one-eighth of his gas rights to the National Union Oil & Gas Company for $1,200 in cash, and the use of a drilling machine owned by the National Union Company.

This assignment denominated a "royalty assignment" further provided as consideration that the National Union Company granted Miller the use of said drilling machine for the purpose of drilling a second well upon said leasehold, provided the National Union Company remained the owner of said machine, and the same was not otherwise in use when desired by Miller, and by this assignment Miller conveyed to the National Union Company "all his right, title and interest in and to the total one-eighth part of all gas produced, saved, and marketed from said leasehold, and the total one-eighth gross part of any and all rights, profits, or benefits granted under said contract with the White Eagle Oil & Gas Company, without cost, expense, or charges of any kind whatever to party of the second part, other than the consideration above set forth."

After execution of the contract between the White Eagle Company and Miller, and after execution of the contract between Miller and Harris & Haun, Inc., but shortly before the assignment from Miller to the National Union Company, the well was started, and was thereafter drilled to about 2,100 feet, and then abandoned as a dry hole. In the course of the drilling, claimant Floyd E. Richard was employed at casing crew work, and claimants W. L. Nuckolls and J. H. Pritchard were employed as tool dressers. Due to drilling difficulties and a fishing job, and the delay and extra expense incident thereto, the funds available to Miller became exhausted, and when the well was abandoned and plugged, balances were due to the claimants in the sums of $450, $380, and $360, respectively. In this action these claimants seek to recover these sums representing balances due them for their labor.

It is the theory and contention of the claimants that the aforesaid agreements and assignments show the interest of the two corporations in the drilling of the well, and that these two corporations and J. E. Miller co-operated together in the development of this lease for oil and gas purposes, with an agreement between them showing an agreement to share in the profits, if there were any in the transaction, and that they were so co-operating and agreeing as mining partners and were liable for the bills of labor.

There are some assignments of error predicated upon certain of the instructions given and upon refusal to give certain instructions, but these assignments of error are presented with but scant argument and no citations of authority, and we will dispose of them with the conclusion that a careful examination indicates clearly that these issues of partnership were fairly presented to the jury in the instructions given, and there was no instruction refused, which was necessary, or should have been given, in addition to the instructions actually given.

Complaint is also made as to the action of the trial court in permitting the claimants to amend their pleadings to more specifically charge the partnership, which permission was granted in the course of the trial, but it does not appear that the cause of action was changed, or that the defendant corporations were surprised by this amendment. Long before the trial the defendant corporation had answered, specifically denying the existence of a mining partnership, and when these amendments were permitted in the course of the trial, although defendant corporations excepted thereto, they did not seek delay, or further time to oppose those allegations, and, in view of the broad discretion of trial courts to permit amendments, we think this amendment was properly permitted and could not in any sense be said to be an abuse of discretion.

The real question in the case is as to the sufficiency of the evidence to sustain the finding of the jury and judgment of the trial court that the two defendant corporations were mining partners with J. E. Miller, and we must consider the status of the two defendant corporations separately, as their contracts were different, and different acts, conduct, and circumstances were relied upon to show that they were co-operating with J. E. Miller in the development of the lease and in the drilling of this well.

As to the status of the defendant corporation, Harris & Haun, Inc., the provisions of the agreement as above set out have at least some tendency to show an intent on the part of Harris & Haun to co-operate with Miller in the development of the lease and in the drilling of this well as mining partners, although the contract asserts that such was not the intention. In addition to entering into this contract, Harris & Haun, Inc., did, in certain respects, co-operate with Miller in the drilling of the well. They paid half of the cost of digging the slush

pond and paid Miller's half thereof out of money owing to Miller, furnished the pipe and fuel gas as contracted, and also furnished and laid the gas line, furnished and laid the water line, delivered the casing as needed in their own truck, watched the daily progress of the well, and required and received daily drilling reports. Harris & Haun kept their foreman on the property every day during the drilling of the well, and he gave instructions which were followed. It was in evidence that while Miller was in charge of the work, the foreman was also there each day, and that he, as well as Miller, gave instructions, and that this foreman also gave orders to Miller. On at least one occasion Mr. Harris, president of Harris & Haun, Inc., while upon the lease, complained at the idleness of the workers and said to them, in substance, "You boys better get to work, we can't make any money with you sitting in the house," or "Boys get to work or you can't run pipe here." Harris & Haun aided in a necessary fishing job, and on one occasion, when the question arose as to whether the well should be abandoned or drilled to a greater depth, Harris & Haun, in a conference with their foreman, decided in favor of the further drilling, and their foreman's instructions to that effect to Miller were followed. Mr. Harris also made statements to the foreman, indicating an admission of the liability of Harris & Haun for the labor bills. It is contended by Harris & Haun that their foreman was on the premises only to look after their water and fuel lines and their casing, and that any orders given by their foreman were given in the protection of their property and in the interest of making the hole a safe place to run their casing; and that anything else said by him was only by way of giving advice based on his experience, which could be followed or not. But after hearing testimony as to all these details, and considering the written contract, the trial court and jury concluded that Harris & Haun were co-operating as mining partners with J. E. Miller.

We think this proof clearly brings this issue under the rules heretofore announced by the court.

In Robinson Petroleum Co. v. Black, Sivalls & Bryson, Inc., 138 Okla. 128, 280 P. 593, an action on behalf of laborers and materialmen furnishing labor and material on a certain oil and gas lease, the contract did not have the tendency to show an intent to co-operate as mining partners to the extent as is shown in this case, and in the body of the opinion in the Robinson Case, the court said:

"Had the Robinson Company and Sol Robinson done nothing more than to enter into the contract, * * * they would not have become liable for the materials furnished and the labor performed, and under the numerous decisions, no partnership would have been formed."

But the court held that on account of the conduct of Robinson in co-operating, the parties were chargeable as partners, and further, in the body of the opinion, the court said:

"In the case of Wammack v. Jones [103 Okla. 1, 229 P. 159] supra, the general proposition is laid down that a mining partnership is never created solely by operation of law, but must exist by reason of a contract voluntarily entered into. This is, perhaps, the leading case on mining partnership in Oklahoma, and is referred to frequently. However, the broad principle announced in that case has been departed from somewhat. In the recent case of McKay v. Kelly, 130 Okla. 62, 264 P. 814, it was held that a mining partnership did not exist by reason of an agreement, either expressed or implied, but arises from the relation and conduct of the parties. Whether or not a mining partnership exists, is largely a question of fact for a court or jury, taking into consideration the facts and circumstances surrounding each case. Cobb v. Martin, 32 Okla. 588, 123 P. 422.

"While it often has been held that an agreement to assign an interest in a lease, in consideration of the drilling of a well thereon, does not constitute a mining partnership, even though the agreement further provides that if the well is productive the cost of future development shall be borne by the parties in proportion to their respective interest, in each case so holding, the determination of the whole matter rested upon the contract itself, and in such cases there was no evidence that the parties sought to be charged held themselves out as partners"

—and the court concluded that from an examination of the record there was sufficient evidence to justify the trial court in determining that there was co-operation between the plaintiff in error and the driller; the court saying further:

"And while there was no specific or definite agreement about the profits and losses, we believe that their acts and conduct toward the claimants who furnished material and labor were such as to make them each liable for the act of the other in the drilling of the oil well in question."

See, also Schraeder v. Gormley, 127 Okla. 65, 259 P. 869, and Young v. Krumme, 109 Okla. 145, 236 P. 606.

In McKay v. Kelly, 130 Okla. 62, 264 P.

814, it was held that the acts and conduct of the parties in co-operating together in the development and operation of the lease, were sufficient to constitute the parties to be mining partners, although without any agreement, expressed or implied, the court said that a mining partnership was not based upon any agreement either expressed or implied, but arose from the relation of the parties independent of the purpose to form a partnership.

Applying these rules of law it seems clear that the defendant corporation, Harris & Haun, Inc., being interested with J. E. Miller in the lease and in the well, did in truth and in fact co-operate with him in the development of the lease and in the drilling of this well, and they became and were mining partners.

This defendant corporation cites the following cases: Gillespie v. Shufflin, 91 Okla. 72, 216 P. 132; Wammack v. Jones,. 103 Okla. 1, 229 P. 159, and Jones v. Sinclair Crude Oil Purchasing Co., 130 Okla. 182, 266 P. 439, cases wherein it was held that no mining partnership existed. But our conclusion here is not contrary to those decisions, as analysis will clearly show.

In Gillespie v. Shufflin, supra, G. agreed with S. to pay a part of the expense of drilling an oil well; S. was to perform the labor and bear the remaining expense thereof, and, in consideration of drilling such well, each was to receive a proportionate interest in the lease on which the same was drilled. Then S., without the knowledge or consent of G., obtained an interest in an adjoining lease for himself in consideration of the drilling of the same well. G. brought suit, alleging that he and S. were mining partners in the development of the lease and the drilling of the well, and that whatever interest S. obtained in the adjoining lease should be construed to be the property of the mining partnership so as to permit him, G., to share therein. The court held that there was no mining partnership, and in the body of the opinion said:

"We cannot say that the foregoing evidence shows an intention to form a partnership"

—and the court there quoted from Municipal Paving Co. v. Herring, 50 Okla. 470, 150 P. 1067, as follows:

" 'Where the parties themselves are concerned, the partnership is not created except where the parties so intend it by voluntary agreement to that effect, and not by implication of law'."

And there the court also quoted from Gorman v. Carlock, 72 Okla. 104, 179 P. 38, as follows:

" 'We do not understand * * * because a party may be interested with two or three persons in one lease that when he acquires an interest with different persons in another lease, or acquires another lease for himself, that the co-owners in the first lease become partners in all the leases acquired by said person'."

In Wammack v. Jones, supra, the court said in syllabus paragraph 1:

"A partnership is the association of two or more persons for the purpose of carrying on business together and dividing the profits and losses between them, and exists as the result of a voluntary contract between the parties, and never solely by operation of law"

—and in syllabus paragraph 2:

"A contract between the owners of an oil and gas lease with a driller to sink a test well upon such lease in consideration of the assignment of an undivided interest in such lease to such driller, does not create a partnership between such owner and driller."

But in that case it seems the agreement itself, and only the agreement, was relied upon as creating the mining partnership, and in the body of the opinion the court said:

"It is not contended that the defendants Wammack and Lindley held themselves out to be partners in this drilling enterprise, or that they had anything to do with the employment of the plaintiff. They simply made a contract with the defendant Settle to drill a test well upon their leasehold estate, and instead of paying in cash agreed to and did assign to the said defendant a fixed interest in said estate. Of course, all of the parties owned an interest in this lease and were interested in having the test well drilled, but this did not make them partners."

And further, in the body of the opinion, the court said:

"The contract in the instant case expressly negatives the theory that the defendants Wammack and Lindley were to pay any part of the expenses of the drilling of the well, or to in any way share in the profits and losses of such drilling. In order for the plaintiff to recover against the defendants Wammack and Lindley, the burden was upon him to show that said defendants had by express or implied contract associated themselves with the defendant Settle for the purpose of drilling said well and dividing the profits and losses between themselves."

So that in that case we observe the

court merely held that the agreement did not create the mining partnership, and we should recall here that, in Robinson Petroleum Co. v. Black, Sivalls & Bryson, supra, this court observed:

"However, the broad principle announced in that case (Wammack v. Jones) has been departed from somewhat."

In Carson v. Waller, 127 Okla. 186, 260 P. 72, this court said:

"A mining partnership or joint adventure cannot exist, unless there is a co-operation among the parties in the development of a lease for oil and gas, each agreeing to pay his part of the expense, and to share in the profits and losses."

However, in that case, as in Wammack v. Jones, supra, reliance was had solely upon the agreement of the parties as constituting a mining partnership, and, in the body of the opinion, the court said:

"Neither of the plaintiffs ever saw or talked with defendants Carson and Malernee prior to their employment. The evidence does not establish that the defendants Carson or Malernee at any time held themselves out to these plaintiffs, or any other person, as partners with defendant Gieanger in this drilling enterprise.

"It is contended, however, by the plaintiffs, that the contract in itself creates what is termed a mining partnership, and in their brief they discuss two paragraphs of said contract, which they contend are sufficient in law to constitute said contract a partnership contract. It is contended that the paragraph in said contract providing for the assignment of said leases to the said Will Gieanger, coupled with the provisions that the proceeds arising from the sale of said leases should be deposited in a special fund in the Bank of Crescent, Okla., to be checked out only for the purpose of paying drilling expenses, and the further provision that prior to the completion of the well said funds should be held in trust for such purpose only, and could only be checked upon when such checks were countersigned by R. W. Carson, an agent for W. A. Carson, defendant herein, creates a partnership among and between the defendants Carson, Malernee and Gieanger.

"We think this contention cannot be sustained. In our opinion, the mere fact that the defendants Carson and Malernee assigned these leases to the driller, Gieanger, as part payment for the drilling of said well, instead of paying said amount in cash, and took the extra precaution to see that the money derived from the sale of said leases should go towards the liquidation of expenses incident to the drilling of the well, in no wise makes said defendants partners with said Will Gieanger."

In Jones v. Sinclair Crude Oil Purchasing Co., supra, this court said, in syllabus paragraph 1:

"A contract between the owners of an oil and gas lease, with a driller to sink a test well upon such lease in consideration of the assignment of an undivided interest in such lease to such driller, does not create a partnership between such owners and driller."

Which is clearly not in conflict with the holding at this time in this case, and all the cases cited by all of the parties here indicate and show that the true rule is that mere joint ownership in the leasehold, or joint interest in the success of the well, does not constitute the parties a mining partnership, and that a person may be employed by contract to drill a well, and that persons may purchase an interest in a leasehold, or in a well being drilled, or to be drilled, without creating a mining partnership, but that when persons jointly interested in a leasehold, or in the success of the drilling of a well, co-operate and work together in the drilling of the well and in the development of the leasehold, such conduct may constitute them mining partners and create a mining partnership, which, under the law, is created, not by agreement alone or joint interest alone, but by their joint interests and their agreements, and their actions and conduct in co-operating together in the project, and that each case must be determined from the express or implied agreements and the facts and circumstances shown to exist therein.

Now, as to the status of the defendant National Union Oil & Gas Company, there exists a situation entirely different; the royalty assignment appears to be nothing more than a mere conveyance of the one-eighth interest as set out in the portion above quoted, for $1,200 in money and the use of the drilling machine. There was no other contract between J. E. Miller and the National Union Company, and, therefore, none of the provisions as were included in the Harris & Haun contract above set out, and this assignment to the National Union Company does not in any sense create a mining partnership between Miller and National Union Company, nor does it indicate, nor tend to indicate, an intention to form any such partnership, or to in any manner co-operate in the drilling. The National Union Company did not in any manner co-operate with Miller, or with Harris & Haun, Inc., in the actual development of the leasehold or in the drilling of this well. We have heretofore observed that Harris & Haun, Inc., did co-operate with Miller, and

we have observed the particular details of this co-operative development, but the National Union Company did none of these things. It is true that the National Union Company did own an interest in the gas rights, and in all rights theretofore granted to Miller by the White Eagle Company, which held the oil and gas lease, and that the National Union Company was interested in the success of this drilling venture, but the National Union Company paid Miller the consideration for this interest, and did nothing further. We have carefully examined the record, and, after considering all the evidence and the foregoing authorities, it clearly appears that the National Union Company was not a mining partner with either J. E. Miller or Harris & Haun, Inc.

In Barrett v. Buchanan, 95 Okla. 262, 213 P. 734, this court said in syllabus paragraph 1:

"Where tenants in common co-operate in developing a lease for oil and gas, each agreeing to pay his part of the expenses and to share in the profits or losses, they constitute a mining partnership."

This was an action by one of the mining partners to have the interest of the parties in the oil and gas lease determined and established, and for an accounting, and in the body of the opinion the court said:

"When plaintiff purchased an undivided one-half interest in the oil and gas lease, he became a tenant in common with Buchanan, and when thereafter Buchanan and the plaintiff agreed to develop the property, each paying his part thereof, and did develop the same in common, the relationship created by this arrangement is usually referred to as a mining partnership."

It is clear in that case that the mere purchase by plaintiff of an undivided one-half interest in the oil and gas lease did not constitute him a mining partner, but when thereafter an agreement was made to develop the property, each paying his part of the costs, and as the court said in the body of the opinion, they "did develop it in common," then there came into being the relationship which, as the court states, was created by this agreement, which is usually referred to as a mining partnership, and the court held that the parties in that case were mining partners by reason of their joint development of the property in which they had a common interest. Our holding in this case in nowise conflicts with the opinion in Barrett v. Buchanan. We hold that Harris & Haun, Inc., became a mining partner with Miller by reason of their contract and joint development as in Barrett v. Buchanan, while we hold the National Union Oil & Gas Company did not become a partner, because while this defendant corporation purchased an interest, it did not in any manner co-operate in the development as did Harris & Haun in this case, and as did Barrett & Buchanan in that case.

One other question remains for our consideration, and that is as to the dismissal of the action as against the White Eagle Company. In the beginning the claimants joined this corporation and sought to hold it as a mining partner; however, at the commencement of the trial, dismissal was moved as to this company, the claimants evidently having concluded there was no basis for contending the White Eagle Company was a mining partner. The defendants Harris & Haun, Inc., and National Union Oil & Gas Company complain of this dismissal, apparently upon the theory that the White Eagle Company was a mining partner, and that in such an act as this all partners must be sued, but this contention cannot be sustained, as there is nothing whatever to indicate that the White Eagle Company was a mining partner, or had any interest whatever, except as the leaseholder with contract with Miller to drill the well. No one contended that the White Eagle Company co-operated with Miller in the drilling of the well in such way as to constitute that company a mining partner with Miller.

We, therefore, conclude that there was no error in the judgment of the trial court, in so far as that judgment determined that Harris & Haun, Inc., and J. E. Miller were mining partners, and no error in the rendition of judgment against J. E. Miller and Harris & Haun, Inc. We further conclude that the verdict and judgment of the trial court, in so far as it was determined that the National Union Oil & Gas Company was a mining partner and a part of said mining partnership, are clearly against the weight of the evidence and are not supported by any competent evidence and are error.

The judgment of the trial court as against the defendant corporation, Harris & Haun, Inc., is affirmed, and the judgment of the trial court in so far as it affects the defendant corporation National Union Oil & Gas Company, is reversed, with directions to render judgment for the defendant National Union Oil & Gas Company.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, ANDREWS, McNEILL, OSBORN, BAYLESS, and BUSBY, JJ., concur.