GARBER & PULSE, Inc., et al. v. GLOYD et al.

No. 20663.     April 17, 1934.

McKeever, Elam & Stewart and George Schwabe, for plaintiffs in error.

Z. I. J. Holt, E. M. Lee, Felix Bodovitz, and Holt & Kopplin, for defendants in error.

BAYLESS, J.  Bush & Bohn, a copartner-

ship, filed an action in the district court of Payne county, Okla., against B. F. Gloyd, Charles C. Widdoes, Mrs. Charles A. Widdoes, Garber & Pulse, Inc., a corporation, Superior Tube Company, a corporation, Champlin Refining Company, a corporation, Drane Tank Company, a corporation, and others who were not served with summons and who are not material to a determination of this appeal. The relief sought by said action was a personal judgment against the defendant Gloyd, and the establishment and foreclosure of a mechanic's lien against all of the defendants.

Appropriate pleadings were filed and various issues tendered and joined as between the various parties to the action, but as the appeal is brought by Garber & Pulse, Inc., a corporation, Superior Tube Company, a corporation, and Champlin Refining Company, a corporation, who are the plaintiffs in error, we will confine our attention to those issues only. The plaintiff below will be referred to by that designation in this opinion, and the various defendants by some shortened designation appropriately descriptive of each of them considering their respective names.

The facts of the case are these, substantially: Gloyd blocked up some leases ·in Payne county, Okla., upon which he desired to have drilled a test well. About July 7, 1926, he entered into an oral agreement, later reduced to writing, with the Superior Tube Company, by which it was to furnish, and did furnish, a steel derrick to be used in drilling a well upon the particular lease in question. The agreement provided that the derrick should remain the property of the Superior Tube Company, but in the event the well drilled should be a producing well, the title to the derrick should pass to Gloyd as a consideration for all of which Gloyd agreed to, and on October 26, 1926, did, execute and deliver to the Superior Tube Company an outright assignment of an undivided one-sixteenth interest in and to the lease upon which ·the well· was to be drilled.

On July 30, 1926, plaintiff, under an oral contract with Gloyd, commenced the construction of a rig upon the lease in question and completed said job, furnishing all of the labor and materials and expense thereof, except for the derrick, which plaintiff knew came from the Superior Tube Company, but it paid the freight thereon from Tulsa to the lease, for all of which plaintiff was to be paid the reasonable value, amounting to $4,450. Plaintiff's last work was done and material furnished October 3, 1926, and the lien statement therefor was filed December 3, 1926.

On September 22, 1926, Garber & Pulse, as drilling contractors, entered into a written contract with Gloyd to drill a well upon the lease in question to a depth of 4,500 feet, if necessary, for a consideration of an assignment of a three-fourths interest in the lease upon which the well was to be drilled and all interest in certain other leases, and the transfer to it of the title to the rig and other equipment then on the lease, represented to belong to Gloyd, and to be free of debt. Garber & Pulse moved its drilling tools and equipment upon the lease and began drilling about the middle of October, 1926, and continued drilling until about the 1st of December, 1926, to a depth of about 1,200 feet, when it learned of the lien claims of plaintiff and Drane. Thereupon, it quit drilling and demanded of Gloyd that matters be straightened out before further drilling would be done, and no drilling has been done since.

It is not certain on what date the tank was ordered, but about the 14th of October, 1926, Drane, under oral contract with Gloyd, furnished a 500 bbl. wooden tank upon the lease, for which it was to be paid $275. The tank was delivered upon the lease while plaintiff was still completing its work and before Garber & Pulse actually began drilling, but it was not erected until sometime later. A mechanic's lien statement was filed by Drane in February, 1927, the exact date not being shown.

On November 10, 1926, pursuant to previous agreement, Garber & Pulse execu'ed and delivered to Champlin an assignment of an undivided one-eighth interest in and to the lease upon which the well was being drilled as a consideration for the use of an engine, a pump, and casing theretofore loaned by Champlin to Garber & Pulse, and taken upon the lease by Garber & Pulse to be used in drilling the well, as aforesaid.

The trial court, upon this record, rendered judgment having the following salient features: Money awards to plaintiff and Drane Tank Company, according to the prayers of their pleadings, and these awards were declared to be liens upon certain described property. No objection is made to the money awards, but Garber & Pulse appeal in so far as its drilling tools are subjected to the lien; Champlin Refining Company appeals in so far as its equipment, loaned to Garber & Pulse, is subjected to the lien; and the Su

perior Tube Company appeals in so far as its rig is subjected to the lien.

The first argument advanced by the lien claimants is that the contracts made by Gloyd with the Superior Tube Company and Garber & Pulse, and by Garber & Pulse with the Champlin Refining Company, resulted in a mining partnership and thereby subjected their property to all lien claims.

By these contracts the Superior Tube Company, Garber & Pulse, and Champlin Refining Company acquired fractional interests in and title to the lease. It is not unreasonable to say that these parties, as well as the others owning interest therein, were interested— mutually interested—in the successful development of this lease. But ownership and mutual desires or hopes for success are not sufficient to bring about the relationship of mining partners. The case of Arkansas Fuel Co. v. McDowell, 119 Okla. 77, 249 P. 717, and the other cases cited, relied upon by the lien claimants as sustaining their argument, have elements in addition to mutual ownership and hope. In Arkansas Fuel Co. v. McDowell, supra, in addition to acquiring an interest in the title to the lease, the company's superintendent was sent upon the lease, undertook the direction of the drilling operations, and actively assisted in trying to complete the well within a specified time to save the lease. We will not discuss this phase further, for we deem the rule laid down in the case of National Union Oil & Gas Co. v. Richard, 164 Okla. 13, 22 P. (2d) 88, as laying down the correct rule, and as being applicable to this situation. Therefore, in our opinion, there was not a mining partnership between the parties interested in the lease.

We will next direct our attention to the arguments concerning the property of Garber & Pulse and Champlin Refining Company, all of which was taken upon this lease by Garber & Pulse under a contract with Gloyd to perform services only. There is no contention that Gloyd owned any interest in this particular property at the time it was taken upon the lease, or that anything transpired while it was being used upon the lease that would give him any claim to title thereto. We are of the opinion that a person who takes his drilling equipment or borrowed equipment upon the lease of another for the purpose only of drilling a well thereon, and the owner of the lease does not acquire any interest in the title thereto, does not thereby subject his property to the lien claims of third person creditors of the lease owner. It is the intention of the law to create a lien upon the property of the contracting lease owner, in favor of those having claims against the contracting lease owner. As well might it be said that a carpenter, who takes his tools and equipment upon the land of another and uses them in performing services in the erection of a house thereon for a specified interest in the title to the land, thereby subjects his tools and equipment to the lien claims of those furnishing materials for the building of the house. Therefore, the judgment of the trial court is erroneous in so far as it attempts to subject the drilling equipments, tools, etc., taken upon this lease by Garber & Pulse, belonging to itself or to the Champlin Refining Company, to the lien claims of Gloyd's creditors.

We next consider the property of the Superior Tube Company, the rig. This rig was furnished to Gloyd by this company under the terms of a written contract, the pertinent portion of which reads:

"We will furnish one 4" x 84' Superior steel drilling derrick, including four foundation sills, bullwheel posts and bearings, calfwheel posts and bearings, and 6-pully crown block to be used by you to drill a well in the N. E. of S. E. of N. W. of 32-18-3E., Payne county, Okla., to a depth of 4,500 feet, unless oil or gas is discovered in paying quantities at a lesser depth.

"You agree to pay the freight from Tulsa to Mehan, Okla., and all transportation and erecting charges.

"In the event that the said well is a dry hole, the derrick is to remain our property.

"In the event that the well is a producing oil or gas well, in paying quantities, the derrick is to become your property.

"In consideration of the above you are to deliver to us, within ten days after spudding of the well is started, an assignment of a one-sixteenth (1/16) royalty interest in the south half of the northwest quarter of sec. 32-18-3E, Payne county, Okla., being 80 acres, more or less."

The terms of this contract are statutory terms, that is: The company agrees to "furnish" certain equipment to be "used" in drilling a well. It is not termed a loan or a rental of the equipment. The entire irrevocable consideration for the furnishing, use, and title to this rig was expressed as one-sixteenth (1/16) interest in the lease. The value of this consideration contracted for might be more or less in the future than at the time it was contracted for and given. The future title to the rig was made to turn upon the success of the drilling venture, which would be brought about by others who might have lien rights as a result thereof, and not upon the option of the parties for an additional consideration. This situation ma-

terially differs from that in the case of U. S. Supply Co. v. Andrews, 71 Okla. 293, 176 P. 967, for in that case the contract used the terms "rent" and "lease," specified a consideration for this restricted use, and contained an option by which the lessor might purchase the title upon the payment of a materially greater sum over and above the rental.

We believe, under the facts in this case, it would violate every principle upon which lien laws are based to permit the parties to contract as they did in this case and yet call it merely a "loan" or a "lease." We hold that the contract under consideration, by which the Superior Tube Company received a valuable consideration presumably equivalent to the sale value of the rig, vested such an interest in the title to the rig in Gloyd, the contracting owner of the lease, as to subject it to the lien claims of Gloyd's creditors, for materials and labor furnished and used upon the lease, among whom are plaintiff and Drane Tank Company.

The judgment of the trial court is modified as hereinbefore indicated, and, as modified, is affirmed and remanded to the trial court for further proceedings not inconsistent with the views herein expressed.

RILEY, C. J., and SWINDALL, BUSBY, and WELCH, JJ., concur.