## H. H. REARDON DRILLING CO. v. SOUTHWEST GAS UTILITIES CORP. et al.

No. 25378.   Jan. 14, 1936.

Turner & Lucas, W. N. Banks, O. L. O'Brien, and Walter L. McVey, for plaintiff in error.

Long & Presson, for defendant in error Southwest Gas Utilities Corporation.

PHELPS, J. H. H. Taylor owned a 40-acre oil and gas lease. By written contract, subsequently recorded, he made an arrangement with the H. H. Reardon Drilling Company, plaintiff in error, to drill an oil well on the lease. Under the terms of the contract the drilling company, being owner of certain rotary drilling equipment, was to furnish the use of said equipment and drill the well to the Wilcox sand, or to a depth of 4,300 feet if said sand was not found at a lesser depth. The lessee, Taylor, was to pay all expenses in connection with the drilling of the well, including the expense of moving the tools to the location, was to pay all labor and for all supplies and repairs of equipment, was to furnish adequate gas for the drilling, erect a derrick, pay compensation insurance, and, in short, stand all the expense of every nature in connection with the project. The contract further provided that the lessee should pay H. H. Reardon, president of the Reardon Drilling Company, $4 per day for the expense of operating his car and living expenses as tool pusher. There was no consideration to be received by the drilling company unless oil and gas should be discovered, the contract providing that an assignment of a one-eighth interest in the lease should be placed in escrow, to be delivered to the drilling company upon discovery of oil, and that in the event the well should be a commercial paying well, one-eighth of the cost of equipping the well should then be paid by the drilling company from its share of the oil runs. There was no provision in the agreement for future development or operation of the lease.

The lessee, Taylor, did not have enough money to stand all the expense of moving the drilling equipment from Texas, and the drilling company advanced him $250 with which to buy gasoline. This $250 was repaid to the drilling company by Taylor. When the outfit had been moved onto the location the drilling company, represented by Reardon and his son, began drilling. The Southwest Gas Utilities Corporation (defendant in error) orally contracted with the

lessee, Taylor, to furnish gas for the drilling operations, and did furnish said gas, and was paid on account from time to time by Taylor. Due to shortage of money, labor troubles developed, and once or twice Reardon persuaded the men to go back to work and said that money to pay them would be forthcoming. On one of these occasions the Atlantic Petroleum Company advanced $2,500 "bottom hole money." The letter agreeing to pay this money was written to Taylor, and Taylor indorsed it to Reardon, who then obtained the money and paid some of the claims.

Two actions were filed in the district court against Taylor and the Reardon Drilling Company. The defendant in error, Southwest Gas Utilities Corporation, was plaintiff. in one of those actions, and Frank L. Warren was plaintiff in the other action. Ten other parties intervened, claiming liens for labor and material furnished. The causes were consolidated for trial and appeal. The trial court rendered judgment for all of the lien claimants, which included a personal judgment against the plaintiff in error, Reardon Drilling Company, and granted said claimants liens against the drilling equipment belonging to plaintiff in error.

This judgment was based expressly on a finding that a mining partnership existed between the lease owner, Taylor, and the drilling company. The drilling company, in appealing, contends that the contract does not form a mining partnership and that neither did the practice and conduct of the parties in the drilling operation constitute a mining partnership.

The records in the office of the clerk of this court reveal that plaintiff in error served copies of its brief on all claimants in June of 1934. No brief having been filed by any of the defendants in error, we reversed the judgment and remanded the cause on March 19, 1935, but upon the application of the Southwest Gas Utilities Corporation we withdrew that opinion on April 23, 1935, granting that defendant in error an opportunity to file a brief. The brief has been filed and, as to that defendant in error, we consider the appeal on its merits. As to the other defendants in error, who have filed no briefs, we adhere to and reiterate the rule announced in our former decision, as set forth in paragraph 1 of the syllabus hereof, and the judgments in their favor are reversed.

The Southwest Gas Utilities Corporation does not contend that the contract between the lessee and the drilling company is one of partnership. The contention of that defendant in error is that when the drilling company advanced the $250 to the lessee to use in purchasing gasoline in moving the equipment to the location, and persuaded the workmen to resume their labor, and appeared generally to be in charge of the drilling operations, it thereby became a mining partner.

We have read the entire record and are unable to agree with the assertion that such activity constituted the drilling company. a mining partner. It is evident from the statement of facts above that the drilling company, acting through Reardon, was merely the agent of Taylor. The $250 advanced for gasoline was repaid, which is altogether inconsistent with the theory of joint undertaking. The evidence is undisputed that the "bottom hole money" was loaned to Taylor and not to Reardon and that Reardon's activities in connection therewith were for and on behalf of Taylor. The fact that Reardon had active charge of the drilling, including the employing and discharging of workmen, is of no particular significance with reference to the particular point being discussed, for if that in itself should constitute a mining partnership, all drillers would be mining partners, and it would be impossible for a driller to operate at all without thereby subjecting himself to liability for the debts of the lessee. Plaintiff's own evidence reveals that it did not look to Reardon or to Reardon Drilling Company for payment of the gas bill; the contract was made with Taylor, and in the first lien statement filed by plaintiff the drilling company was not named. Of course, if a mining partnership really existed, plaintiff could enforce its contract with Taylor, as against the other partner, but the evidence does not justify such finding, and we mention the fact that the plaintiff did not look to the drilling company for payment because of the significance of that fact as evidence and not because of any supposed hypothesis that the drilling company would not be liable in the absence of its promise to pay.

Such contracts as are involved here have been before this court many times and we have repeatedly held that a contract between the owner of an oil and gas lease and a driller to sink a test well upon the lease in consideration of the assignment to the driller of an undivided interest in such lease does not create a partnership between the

owner and driller. Jones v. Sinclair Crude Oil Purchasing Co., 130 Okla. 182, 266 P. 439; Wammack v. Jones, 103 Okla. 1, 229 P. 159; Carson v. Waller, 127 Okla. 186, 260 P. 72; Tidal Oil Co. v. Fullerton-Stuart Lumber Co., 137 Okla. 58, 278 P. 330; Robinson Petroleum Co. v. Black, Sivalls & Bryson, 138 Okla. 128, 280 P. 593; Garber & Pulse, Inc., v. Gloyd, 168 Okla. 88, 31 P. (2d) 947. For full discussion of this question see National Union Oil & Gas Co. v. Richard, 164 Okla. 13, 22 P. (2d) 88.

Such "co-operation" in the drilling of the well as was here rendered by the Reardon Drilling Company was only that "co-operation" proper to and consistent with the role of driller and was not sufficient, in the light of the foregoing decisions, to constitute a mining partnership.

Accordingly, the judgment against the H. H. Reardon Drilling Company is reversed and the cause remanded.

McNEILL, C. J., OSBORN, V. C. J., and RILEY and GIBSON, JJ., concur.