C. C. JENKINS, Amis Construction Co. and Thompson Oil Well Cementing Co., Cross-Petitioners, Plaintiffs in Error,

v.

Stephen G. PAPPAS, Defendant in Error.

No. 40063.

Supreme Court of Oklahoma.

June 11, 1963.

Rehearing Denied July 9, 1963.

Frank T. McCoy, Robert P. Kelly, Lee W. Cook, Pawhuska, for plaintiffs in error.

Don Hampton, Pawhuska, and Byron V. Boone and James O. Ellison, Tulsa, for defendant in error.

BERRY, Justice.

Amis Construction Company and Thompson Oil Well Cementing Company, plaintiffs in error, hereinafter referred to as "plaintiffs" or "Amis" or "Thompson", brought this action (as cross petitioners in the trial court) to hold Stephen G. Pappas, defendant in error, hereinafter referred to as "defendant", an oil and gas mining partner with White Star Oil ompany, hereinafter referred to as "Star", for accounts incurred in the development of an oil-mining lease in Osage County, Oklahoma. There is no dispute as to the amount of the accounts nor that the accounts were incurred relative to the development of a lease located in the SE/4, Sec. 32–25–8 and known as the Oxley Lease.

The trial court sustained defendant's demurrer to plaintiffs' evidence and entered judgment for defendant, and from the trial court's order overruling a motion for new trial this appeal was instituted by plaintiffs. The sole question presented for our determination is whether or not plaintiffs' evidence was sufficient to withstand a demurrer on the issue of the liability of the defendant as a mining partner.

Plaintiffs' evidence consisted, in the main, of the testimony of a representative of Amis, testimony for Thompson was by Mr. Thompson, himself, and also a representative of the Branch of Materials of the Osage Indian Agency. The evidence also includes excerpts from the deposition of defendant and certain exhibits. Briefly stated, this evidence disclosed that on August 30, 1957, defendant then a member of the Board of Directors of Star, proposed to Star a fifty-well drilling deal which provided that defendant would furnish the leases initially; assign a ⅞ths interest in the lease to Star after completion of the drilling; retain a ⅛th interest in the lease to be free and clear of all drilling, completion and production costs if the lease were productive, and to pay $2.00 per foot for each foot drilled in the event of a dry hole. A printed form of contract was used as to each well drilled. Fifty-four wells were drilled in compliance with this arrangement.

Pursuant to such agreement, Star started a well on the Oxley Lease on February 28 and completed it March 19, 1958. The Indian Agency granted a three-month extension of the primary term of the lease so the well could be drilled, and looked to defendant as lessee and his bond for protection of the Agency's interest.

Plaintiffs' evidence tends to show that when they advanced materials and supplies to Star, they did not know defendant nor had they made any claim on defendant prior to Star being placed in receivership.

Star went into receivership in Federal Court and was being administered at the time of the trial.

Both plaintiffs and defendant admit in their briefs that the test to be applied is whether or not this agreement and the subsequent acts of the parties thereto constituted a mining partnership or just a farm-out agreement with an overriding royalty interest retained.

■ We shall consider this appeal under our holding in Randall et al. v. Paine-Nichols Abstract Co., 205 Okl. 430, 238 P.2d 319, 28 A.L.R.2d 887:

> "Where the evidence introduced in support of allegations necessary to recovery, when viewed in its strongest aspect fails to sustain plaintiffs' case, the trial court does not err in sustaining a demurrer thereto."

■ Plaintiffs' contentions are that this evidence was sufficient to show a mining

partnership or an agency existing between defendant, and Star, and the trial court erred in sustaining defendant's demurrer to plaintiffs' evidence. In support of this contention, plaintiffs rely upon their evidence that shows that defendant was a member of the Board of Directors of Star when defendant proposed the drilling project and it was accepted; that the leasehold interest was at all times, prior to plaintiffs' work on leasehold, in defendant's name; that defendant agreed to pay $2.00 per foot to Star for dry holes; that defendant had paid an account of Star for materials on another lease upon direction by Star; and that defendant executed a bond to the Osage Agency guaranteeing compliance with agency rules. We conclude this evidence is not sufficient to establish a mining partnership or an agency between defendant and Star.

The evidence is wholly lacking in support of any showing of reliance upon the above referred-to evidence which in any way influenced plaintiffs' extension of credit to Star.

Amis' only witness testified in substance that he dealt exclusively with Star for the work done on the Oxley Lease; that he had never seen defendant prior to the trial nor had he ever billed him.

Mr. Thompson, the only other witness for plaintiffs, testified that defendant had a good credit rating and Star "didn't", but that the witness had never billed defendant nor made demand on him; that an employee of Star had called an order in and witness extended credit when Star's employee informed him that defendant was in on the deal. There is no evidence tending to show that Star's employee was an agent of defendant.

Plaintiffs cite Edwards v. Hardwick, Okl., 350 P.2d 495, to support their view. As we interpret this case it supports defendant. At page 501 of 350 P.2d, we stated:

"[6] Each case of mining partnership must be determined by its own facts, but three requirements must always be present: (1), joint interest in the property by the parties sought to be held as partners, (2), agreement, express or implied, to share in the profits and losses of the venture, and (3), actions and conduct showing cooperation in the project. (citing cases)

" 'Co-operate', as defined in Webster's New International Dictionary, means 'to act or operate jointly with another or others.' 'Operate' is defined as 'to perform a work or labor, to exert power or influence, to act, to work, to produce an effect.'

"[7] A mining partnership status is created, when the conditions of joint interest in the property and an agreement to share profits and losses are extant, by the actions of the party sought to be charged with such relationship in actively joining in the promotion, conduct or management of the joint venture."

We said in National Union Oil and Gas Company v. Richard, 164 Okl. 13, 22 P.2d 88, 93, and again in Defenbaugh v. Purcell, 191 Okl. 192, 127 P.2d 207, that "the * * * rule is that a mere joint ownership in the leasehold, or joint interest in the success of the well, does not constitute the parties a mining partnership."

We have heretofore stated that "A contract between the owners of an oil and gas lease, with a driller to sink a test well upon such lease in consideration of the assignment of an undivided interest in such lease to such driller, does not create a partnership between such owners and driller." Jones v. Sinclair Crude Oil Purchasing Co. et al., 130 Okl. 182, 266 P. 439. See also Wammack v. Jones, 103 Okl. 1, 229 P. 159.

Our examination of the evidence in so far as pertinent reveals a farm-out agreement from defendant to Star of the Oxley Lease, reserving a 1/8th overriding royalty interest unto himself, and that the evidence presented by plaintiffs, with all reasonable inferences that may be drawn therefrom

and construed most favorably to plaintiffs, fails to meet the burden of proof requisite to establish the relationship of oil and gas partnership or an agency as between defendant Pappas and Star.

We therefore hold that the trial court was correct in sustaining the defendant's demurrer to plaintiffs' evidence and rendering judgment for defendant.

Judgment affirmed.